Duane A. VERDON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16828.

United States Court of Appeals Eighth Circuit.

Nov. 13, 1961.

Rehearing Denied Dec. 8, 1961.

Duane A. Verdon, pro se.

Miles W. Lord, U. S. Atty., Minneapolis, Minn., and Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., on the brief, for appellee.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This is an appeal in forma pauperis from a trial court's order denying a petition, filed under 28 U.S.C. § 2255, to vacate a sentence.

The petitioner, Duane A. Verdon, in August 1960 was serving a 5-year sentence at the Federal Correctional Institution, Sandstone, Minnesota. The sentence had been imposed in 1958 by the United States District Court for the District of Kansas upon Verdon's conviction of a Dyer Act violation. On August 3, while on a work detail, Verdon disappeared. He was arrested near Walker, Minnesota, on August 19 and was returned two days later to Sandstone. He was then indicted for escape, in violation of 18 U.S.C. § 751,[1] from the institution and from the custody of the Attorney General and of the Sandstone warden as the former's authorized representative. Prior to arraignment on November 10 the district court offered Verdon the assistance of counsel. Verdon refused this and also waived the reading of the indictment. He then pleaded guilty and the court referred the case for presentence investigation.[2]

Verdon was next before the court on December 6. The court at that time again offered the assistance of counsel and again Verdon refused. After examination, a 3-year sentence was imposed for the escape; this was to begin upon the expiration of the sentence Verdon was presently serving.[3] No objection,

1. "§ 751. Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both."

2. "The Court: You have no attorney?
"The Defendant: No, Your Honor.
"The Court: You are entitled to a lawyer. If you are without funds, the Court would appoint a lawyer, a member of this bar, to represent you if it is your wish to have a lawyer.
"The Defendant: No, I don't really believe it is necessary, Your Honor.
"The Court: You prefer to go on without—
"The Defendant: I am going to enter a plea of guilty.
"The Court: Yes. I just wanted you to know that if you didn't have funds with which to hire the lawyer, the Court would appoint a lawyer to represent you. You may waive counsel then. And he may be arraigned.
"The Clerk: Do you wish to have this indictment read?
"The Defendant: No.

"The Clerk: Do you want to waive the reading of the indictment?
"The Defendant: Yes.
"The Clerk: And are you guilty of these charges or not guilty?
"The Defendant: Guilty.
"The Clerk: You are guilty.
"Guilty, Your Honor."

3. "The Court: Mr. Duane Alexander Verdon, on the previous occasion that you were before the Court you waived counsel. The Court explained to you, as it shall now, that if you were without funds, the Court would be required, under the Constitution and laws of the United States, to appoint a lawyer who is a member of the bar of this Court to advise with you and to do anything that is necessary in your behalf. What is your wish now?
"The Defendant: I wish to proceed without an attorney, Your Honor. I don't believe I need one.
"The Court: You wish to waive counsel. Of course, you understand that if you were without funds, it would cost you nothing—
"The Defendant: Yes, sir.
"The Court: (Continuing) —to have counsel.
"Mr. Hunt: That being the case, Your Honor, the Government will move for sentence.
"The Court: Very well. Have you anything to say now—
"The Defendant: Yes, Your Honor, I have. There are several reasons why I ran off. To begin with, I was doing a five-year prison term, which most of them do little on. It had been getting on my mind. As an example, when I was sentenced, there was one man that had stolen three automobiles, on the Dyer

oral or formal, to the sentence was made until the present proceeding was instituted in May 1961.

Verdon's § 2255 petition was denied by the trial court with a memorandum which included the record of the December 6 hearing, set forth in footnote 3, and which concluded with the following:

" * * * The instant case exemplifies a disappointed and experienced violator of law as his prior record will disclose. He seeks to portray himself as grossly ignorant and that he should be given the privilege of choosing the sentence to be imposed and the keeper of his freedom.

"Petitioner's attempt to conjure up factual grounds appears to be based on fallacy. Petitioner's complaint of ignorance as to his con-

---

Act, and he got six months in jail. And the next man that come before him stole one car and he got probation, and he was also a loser. And when I went up before him, the Judge said, "In view of your past record I think you deserve the maximum, which is five years." And I had that on my mind, and I had just been turned down from the Parole Board. I served 31 months, and I still had about 15 months to go—about 14 or 15. And then when I—I don't know—it set me a tough time. I want to live as other people. I don't want to steal. I was a truck driver there. I was driving a pickup truck, and I parked that instead of taking that to run off. I just tried hard to live straight. I never stole anything until later. My feet were so sore I couldn't walk any more, I couldn't find any job any more except on one occasion when I found a few hours to work. And that is all I had to eat for 16 days and then—with the exception of one time I was given a meal in a restaurant. I was looking for a dishwashing job, and the lady gave me a meal. Other than that I had nothing to eat all that time as I was determined to go straight.

"The Court: Where were you sentenced?

"The Defendant: I was sentenced from Kansas City, Kansas.

"The Court: You mentioned the fact that you learned from others who were incarcerated with you that they were given a great deal more consideration than you were. Did they tell you what their prior records were, Mr. Verdon?

"The Defendant: Well, I was in court when they were sentenced and the prosecutor read off their records. You see, one of them was similar to mine—not quite as bad perhaps.

"The Court: Of course, nobody knows better than yourself, your own record.

"The Defendant: Yes, sir.

"The Court: I have got quite a list here,—

"The Defendant: Yes, Your Honor.

"The Court: (Continuing) —of law violations by you. Among them, car theft prior to this. Have you anything further to say now before sentence shall be imposed?

"The Defendant: No, Your Honor.

"The Court: Have you anything to say, Mr. Hunt?

"Mr. Hunt: No, Your Honor. I believe you have been fully advised by the Probation Officer, Your Honor.

"The Court: The Probation Officer has made a very thorough report. I have it here. How old are you, Mr. Verdon?

"The Defendant: Thirty-six.

"The Court: Where were you born?

"The Defendant: Staples, Minnesota.

"The Court: What do you presently consider your residence, your home, when not in an institution?

"The Defendant: St. Paul, Minnesota.

"The Court: St. Paul. You are not married?

"The Defendant: No, Your Honor.

"The Court: What is your occupation?

"The Defendant: Carpenter.

"The Court: Carpenter. And how much time have you got to serve now—

"The Defendant: Well, I have—

"The Court: (Continuing) —on your sentence, that you got at Kansas City? You say 15 months?

"The Defendant: Well, that is what I had. And then I lost 285 days good time. My release date is now, I believe, the 18th of July of '62.

"The Court: The defendant, Duane Alexander Verdon, having entered a plea of guilty to the offense charged in the indictment, and the defendant having been now asked whether he has anything to say why judgment should not be pronounced against him, and no sufficient cause to the contrary being shown or appearing to the Court, it is adjudged that the defendant is guilty as charged and convicted. It is adjudged that the defendant, Duane Alexander Verdon, is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of three years, this sentence to commence upon the expiration of the sentence now being served by him."

stitutional rights and coercion is not supported by the record."

The district court later denied Verdon's motion to appeal in forma pauperis on the ground that the petition was not filed in good faith and was without merit. This court granted leave to appeal.

The real issue, as this court has characterized another not dissimilar case, Colbert v. United States, 8 Cir., 1953, 202 F.2d 793, 794, cert. den. 346 U.S. 879, 74 S.Ct. 132, 98 L.Ed. 386, is whether Verdon did "advisedly, voluntarily, and understandingly enter his plea of guilty to that offense?" The gist of Verdon's argument lies in the following:

a. The failure of the district court to inquire, prior to its acceptance of the plea of guilty, as to the reasons for the plea and as to the voluntary character of the plea. Specifically, Verdon states that he pleaded guilty because of his concern over a continuation of his "segregation status" at Sandstone to which he had been subjected from August 21, 1960, when he was returned there, to November 10, when he was arraigned.

b. The failure of the district court, prior to its acceptance of the plea of guilty, to advise Verdon of the exact consequences, by way of possible punishment, of the plea.

c. Verdon's own misapprehension as to possible punishment in that he thought the maximum sentence he could receive on the escape charge was one year rather than 5 years. He argues that a court must concede that a man without counsel "would not be eager to enter a guilty plea to an offense that was punishable by a prison term of five (5) years". He does not claim that his confusion, if any, centered on the one year imprisonment limitation specified in the last phrase of 18 U.S.C. § 751, supra, footnote 1.

He asserts, generally, that the arraignment and the sentencing hearings violated Rule 11, F.R.Crim.P.[4]

 1. *The alleged involuntary character of the plea.* The records of the arraignment and of the sentencing hearing which are set forth in full in footnotes 2 and 3 above, convince us that there is no substance to Verdon's argument as to the involuntary character of his plea. The trial court was considerate and careful in its endeavors to advise Verdon of his right to counsel and as to the protective measures which the court offered him and which were his for the asking. Verdon, however, would have none of this and peremptorily brushed these offers aside.

Verdon's claim here amounts to nothing more than a self-serving statement that he pleaded guilty because he wished to avoid a return to what he called segregation status at Sandstone. Dissatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea. They smack instead only of a desire to achieve as soon as possible a new condition of servitude.

 2. *Misapprehension of punishment.* Verdon's second and third points, relative to the district court's failure to inform him in so many words as to the range of punishment specified in the escape statute and his claim of misapprehension as to his possible punishment on a plea of guilty, may be considered together. There are expressions in the cases that an awareness of the range of punishment is an element in the protection to be afforded under the Sixth Amendment's guaranty of the assistance of counsel and in connection with a defendant's adequate waiver thereof. Mr.

4. "Rule 11. A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty."

Justice Black, speaking for 4 members of the court in Von Moltke v. Gillies, 1948, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, said:

"To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, *the range of allowable punishments thereunder,* possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." (Emphasis supplied.)

See also Snell v. United States, 10 Cir., 1949, 174 F.2d 580, 582 and Cherrie v. United States, 10 Cir., 1949, 179 F.2d 94, 96. Compare Stidham v. United States, 8 Cir., 1948, 170 F.2d 294, 295, and Davis v. United States, 8 Cir., 1955, 226 F.2d 834, 838-9, cert. den. 351 U.S. 912, 76 S. Ct. 702, 100 L.Ed. 1446. On the other hand, this and other courts have said that a defendant who enters a plea of guilty has no absolute right to withdraw that plea. Friedman v. United States, 8 Cir., 1952, 200 F.2d 690, 696, cert. den. 345 U.S. 926, 73 S.Ct. 784, 97 L.Ed. 1357; United States v. Panebianco, 2 Cir., 1953, 208 F.2d 238, 239. And the fact that an accused who pleaded guilty received a sentence more severe than he anticipated is not a ground for vacating or reducing the sentence. Sweeden v. United States, 8 Cir., 1954, 209 F.2d 524, 527; Friedman v. United States, 8 Cir., supra, p. 696 of 200 F.2d; Stidham v. United States, 8 Cir., supra, p. 298 of 170 F.2d; United States v. Page, 2 Cir., 1956, 229 F.2d 91, 92; United States v. McClellan, D.C.W.D. Pa., 1960, 194 F.Supp. 128, 130, affirmed, 3 Cir., 1961, 289 F.2d 319.

It is to be noted, however, that awareness of the possible range of sentence, when mentioned, is named as only one of several factors involved. It is not a factor which, alone and bare, demands in its absence a vacation of a sentence. The circumstances of each case are important.

Although Verdon claims to possess only a sixth grade education, the records here definitely reveal an awareness on his part of his status and predicament, a positive conviction as to what he wanted to do, a resentment at what he recognized and regarded as more lenient penalties imposed upon other Dyer Act violators, and an admission of his having walked away from the work detail. While a specific explanatory statement by the court, before accepting the plea, that the penalty under this particular charge was a fine of not more than $5,000 or imprisonment for not more than 5 years, or both, would have eliminated the presence of this point on this appeal, we are convinced that neither the prescription of Rule 11 nor Verdon's constitutional or other rights have been violated.

What is involved here is an escape from a federal correctional institution and from custody. Verdon, at age 36, has had extensive past experience with the criminal law. He is not a first time offender. He is a convicted felon. He necessarily knows sentencing procedures. He has served, among others, a California sentence of up to 10 years for escape and grand theft, so that even an escape charge is not new to him. His claim of innocence as to the severity of the penalty involved does not command credibility. Verdon had "been around" and certainly must have had an awareness of the serious consequences of his plea. He is, as this court observed in Colbert v. United States, supra, p. 793 of 202 F.2d, also involving an escape charge, "a mature man with a formidable criminal record". His real and obvious complaint is basically directed to the length of his sentence. That sentence, however, is within the range specified by the statute. This case is to be classified with those others, not uncommon, which involve nothing more than a "disappointed expectation when a plea of guilt is not productive of the light sentence confidently expected". United States v.

Weese, 2 Cir., 1944, 145 F.2d 135. Compare McCall v. United States, 4 Cir., 1958, 256 F.2d 936.

The district court's denial of the petitioner's motion to vacate sentence is therefore affirmed.