**Melvin COLLINS, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 54014.**

Supreme Court of Missouri,
Division No. 1.

Feb. 9, 1970.

PEPER, MARTIN, JENSEN, MAICH-EL & HETLAGE, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Richard L. Wieler, Asst. Atty. Gen., for respondent.

HIGGINS, Commissioner.

Appeal from denial, after hearing, of motion to set aside and vacate two judgments of conviction of murder, first degree, and judgment of conviction of assault with intent to rob, imposed on pleas of guilty. Criminal Rule 27.26, V.A.M.R.

On May 22, 1967, Melvin Collins, with his court-appointed trial attorney, Orville Richardson, pleaded guilty to charges of murder, first degree, and one charge of assault with malice with intent to rob, and was sentenced to concurrent terms of imprisonment for life in the murder cases and ten years in the assault case. In this pro-ceeding, instituted November 24, 1967, appellant contends his pleas were involuntary because they were entered out of fear that trial would result in a death penalty on account of adverse publicity, an alleged coerced confession, and improper line-up procedures which he thought could be used against him, and were induced by 16-months' inhuman confinement. The issues thus raised were aired at a hearing February 21, 1968, at which appellant had the services of appointed counsel, Richard Hetlage and John Roach, and after which the court found against appellant. As stated by appellant, the sole issue for review is whether appellant's pleas of guilty were shown to be "involuntary, coerced or unfairly obtained."

The burden of proving his ground for relief under Rule 27.26, supra, was on appellant and review is limited to determining whether the findings and judgment against appellant are clearly erroneous. Mitchell v. State, Mo., 447 S.W.2d 281, 283, 285; Crosswhite v. State, Mo., 426 S.W.2d 67, 70[1].

Evidence at the hearing was adduced from appellant, his previous lawyer, Orville Richardson, and by way of a transcript of proceedings when the guilty pleas were taken.

According to appellant, he was taken into custody between 4:30 and 5:00 p. m., January 1, 1966. He was not advised of his right to counsel and to remain silent. He wanted to call attorney Paul Simon "but they wouldn't let me call him." He was interrogated for two or three hours and then taken to Homer G. Phillips Hospital where he was shown to an injured codefendant who said he was not Al. While in the hospital hall, the victims' family recognized him. He was taken back to Central Station where interrogation resumed until 10:00 or 10:30 p. m. Interrogation was resumed the next day and recessed for lunch. Interrogation was conducted "in a roughly manner" but he was never struck. Interrogations continued

over "maybe ten days," and he signed a confession "between the fourth and fifth day." His brother, Donald Collins, also a codefendant, was said to be planning suicide. He was also taken to the store where the robbery attempt was made and was caused to walk the aisle with a rag and handkerchief in front of his face. He was in several line-ups alone and with others.

He characterized conditions in the city jail as poor, overcrowded, and with bad food. He was in the jail thirteen months, in the workhouse two months, and in Fulton State Hospital two months for mental examinations.

Mr. Richardson was appointed in April, 1966. He explained the nature of the charges against appellant and advised of the alternative of life or death penalty on the murder charges. Appellant understood that a motion to suppress evidence was overruled by Judge Aronson and his jury trial before Judge Bloom resulted in a mistrial April 27, 1967. He was identified at trial by one of the witnesses who saw him at the hospital. The confession was not introduced.

Following the mistrial, his brother, Donald Collins, entered his plea of guilty and newspaper publicity followed. A week or two later, appellant's case again came on for trial and a continuance on the ground of prejudicial publicity was refused.

He was advised of his right to plead guilty and "they said if I pleaded guilty I wouldn't get the death chamber." "They" referred to Mr. Richardson and appellant's wife. He knew his right to a jury trial but figured he had no chance. He acknowledged Mr. Richardson's willingness to try the case. He believed his confession could be used at trial. At the hearing he was satisfied "in a way" that Mr. Richardson did a competent job but felt after entry of his pleas that Mr. Richardson had failed "all of my constitutional rights." However, he wrote to Mr. Richardson before he left for the penitentiary to thank him for his services and to tell him he was satisfied.

The transcript of proceedings at the entry of the pleas before Judge Bloom established that Melvin Collins was 40 years of age, married, father of three children, possessed of eight grades of education, able to read and write, understood how his participation in the holdup in which two people were killed resulted in murder charges against him even though he did not do the actual shooting, understood that conviction of murder, first degree, by a jury would result in a penalty of either death or life imprisonment. A jury was then under summons and appellant understood he could have a jury trial. He understood the consequences of pleading guilty, and Judge Bloom explained: "* * * if you plead guilty * * * and if you're sentenced by the Court on your plea of guilty you cannot at any later date decided (sic) 'Well, I made a mistake in doing that. I shouldn't have done that. I should have let myself be tried by a jury, and I want to withdraw my plea of guilty.' You can't do that. Do you understand that? MELVIN COLLINS: Yes, sir. THE COURT: Once I accept your plea of guilty, if I accept it —that once I do that that's binding on you and you cannot change your mind. MELVIN COLLINS: I understand that." Appellant also acknowledged that he had discussed the consequences of pleading guilty with his wife and Mr. Richardson and that he was "well satisfied" that Mr. Richardson had done everything possible that he would want him to do in defending his case. Judge Bloom asked further: "* * * if the Court permits you to enter this plea of guilty, are you doing it voluntarily? Do you know * * * what I mean by voluntarily? MELVIN COLLINS: Yes, sir. THE COURT: It's your choice. No one is forcing you to do this, is that right? MELVIN COLLINS: Right. THE COURT: In order to get you to plead guilty has anyone made any threats against you or coerced you in any way or in any way induced you to plead guilty against your will? MELVIN COLLINS: No, sir." The prosecuting attorney recommended the sentences ultimately im-

posed and Mr. Richardson made a statement in detail of his preparation by way of investigation and depositions through which he was aware of substantial evidence available to the state to support its charges and, upon this statement, appellant was asked further by Judge Bloom: "Mr. Collins, with respect to the circumstances you being in the store on the 31st of December as outlined by your counsel, is that a fact or not? MELVIN COLLINS: Yes, sir." Appellant was then permitted to withdraw his pleas of not guilty and to plead guilty to the three charges after which he was granted allocution and was sentenced. Upon allocution, appellant advanced no cause why he should not be sentenced, and Judge Bloom proceeded: "Mr. Collins, * * * you're not pleading guilty to this charge with the promise or the hope or the inducement that you're going to be— have to do anything less than serve * * * the punishment as imposed upon you? * * MELVIN COLLINS: No, sir."

In addition to the colloquy between appellant and the sentencing judge, Judge Bloom, Judge Dowd asked why appellant pleaded guilty and he acknowledged he thought there was some possibility he might get the death penalty if he tried either or both the murder charges.

Orville Richardson had practiced law in St. Louis, Missouri, since 1933, principally in trial of lawsuits, and among his recognitions is his past presidency of the Missouri Bar Association. He met with his client, Melvin Collins, on four or five occasions, once with Messrs. Mortimer Rosecan, William Evans, Frank Cleary, and Dan Rabbitt, also distinguished trial lawyers, members of the Missouri Bar, and appointed lawyers for codefendants of Melvin Collins. On several occasions he brought his client's attention to the charges of two separate murders, and the assault with malice which bore a possible penalty of life imprisonment in its own right. He did impress upon his client the seriousness of his situation. "I know that I told him that in my opinion not only was the confession invalid and

unconstitutional, because it was not given in complete accordance with his rights under the Miranda decision * * *, and that I didn't believe that the prosecution would even intend to use it or offer it, because it would be clearly reversible error. Mr. Walsh (prosecutor at the abortive trial) didn't attempt to introduce it in his trial, so I thought I made it very clear to Melvin that in my opinion the confession would not be used and could not be constitutionally used against him." During the trial resulting in mistrial, Mr. Collins was identified by two butchers who were eyewitnesses in the store in addition to the identification by a member of the victims' family in the hospital corridor. Melvin's brother, Donald, pleaded guilty after Melvin's mistrial and at the time Melvin's case again came on for trial there was publicity connected with Donald's plea. "I moved for continuance because of the publicity connected with Donald's plea of guilty, and this was overruled. Now, I don't remember when the motion for continuance was brought up, whether it was the day of the * * * second trial or not. In any case, while I was in the Judge's chambers I was given word by the guard that Mr. Collins wanted to see me. * * * he told me that he had been talking to his wife, and decided to plead guilty."

Judge Dowd, upon this evidence, found against appellant on his claim for relief, and found specifically: that appellant had competent trial counsel in Mr. Richardson and that he fully advised appellant of his rights and of the penalty involved in the charges; that Judge Bloom also fully advised appellant of all his rights before accepting the pleas of guilty and went into detail on appellant's rights, range of punishment, consequences of guilty pleas, "and the voluntariness of the defendant's pleas of guilty and whether any threats, coercion, or inducements were used against the defendant"; that the pleas of guilty were voluntary and not based on coercion, threats or inducements; that appellant understood his rights and had competent

counsel with whom he was fully satisfied; that appellant pleaded guilty to the charges because he was afraid he might get the death penalty at the hands of a jury.[1]

■ Appellant pitches his contention for relief to the proposition as stated in United States ex rel. McGrath v. LaVallee, 2 Cir., 319 F.2d 308, 311[3], that if a plea of guilty is involuntarily given, coerced, or unfairly given, whether through ignorance, fear, or inadvertence, it is invalid and upon proper application should be vacated. As an example of relief given, he cites United States v. Colson, D.C.S.D.N.Y., 230 F.Supp. 953, where evidence established that plea was not voluntary because it resulted from prior threats which gave rise to fear of harm to the accused and his family and from unremitting pressure by prosecution officials to persuade accused to testify notwithstanding those fears. The latter case is of value, not for its factual similarity but for its statement of the judicial function in proceedings under Rule 27.26, supra, and similar provisions. "The determination of the ultimate question of whether the defendant, at the time he pled guilty, had the free will essential to a reasoned choice, rests upon probabilities and, of course, cannot be resolved with mathematical certainty. It involves an evaluation of psychological and other factors that may reasonably be calculated to influence the human mind. The issue of the defendant's state of mind 'is to be decided by the trier of the fact,' * * * just as any other fact issue —the reasonable inferences to be drawn from all the surrounding facts and circumstances.' Accordingly, it is necessary to consider the plea of guilty against the totality of events and circumstances which preceded its entry." 230 F.Supp. l. c. 955 [1, 2].

■ Appellant asserts that he was coerced into giving a confession and subjected to illegal line-up procedures that produced

a state of mind in whch he feared their use against him at trial; that his plea of guilty was prompted by that fear and fear of adverse publicity, and, that being the case, he contends his convictions cannot stand. United States v. LaVallee, supra; United States ex rel. Vaughn v. LaVallee, 2 Cir., 318 F.2d 499–500[2]; and see also Smiley v. Wilson, 9 Cir., 378 F.2d 144, 147–148[5]. The difficulty with this position is that the court has found against appellant on these fact issues after an evidentiary hearing. The statement shows he testified that his pleas of guilty were a result of adverse publicity, a coerced confession, and illegal identification, but he also testified and acknowledged that they were understandingly and voluntarily entered pursuant to the demonstrated advice from both counsel and the court relative constitutional rights, voluntariness, and consequences of guilty pleas. The trial court, justifiably, under the evidence, resolved such conflicts on these fact issues against appellant, and it cannot be said such findings were clearly erroneous. Crosswhite v. State, supra.

■ Nor can his contention that his pleas of guilty were induced by the conditions of his jail servitude while awaiting trial support relief because "dissatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea." Verdon v. United States, 8 Cir., 296 F.2d 549, 552. See also McKenley v. United States, E.D.La., 235 F.Supp. 255, 256[3].

There is also a veiled contention of ineffective assistance of counsel in the assertion respecting Mr. Richardson that "after all he was not a criminal lawyer." This issue was also properly resolved by the court on the evidence of counsel's many years' experience at the trial bar and the

---

1. For companion case affirming denial of relief under similar circumstances, see Dickson v. State, Mo., 449 S.W.2d 576.

ample demonstration of his efforts in appellant's behalf.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and HENLEY, Alternate Judge, concur.

STORCKMAN, J., not sitting.