**Freddie Eugene BALL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56651.**

Supreme Court of Missouri,
Division No. 1.

March 13, 1972.

Rehearing Denied April 10, 1972.

Motion to Transfer to Court En Banc
Sustained and Caused Ordered
Transfered April 10, 1972.

Order of April 10, 1972 Set Aside, Appellant
Permitted to Withdraw Motions for Rehearing or Transfer to Court En Banc
May 4, 1972.

John O. Bond, Jefferson City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief in proceeding under Supreme Court Rule 27.26, V.A. M.R., to set aside conviction and sentence, on jury verdict, of 10 years' imprisonment for burglary and five years for stealing in connection therewith.

The conviction arose out of a break-in at the Emma Creamery in Saline County on June 1, 1964. A change of venue was taken to Cole County and Mr. C. J. Quimby was appointed to represent the appellant-movant, Freddie Eugene Ball. A jury trial resulted in a verdict of guilty. On appeal the judgment was affirmed. State v. Ball, Mo.Sup., 408 S.W.2d 17, decided November 14, 1966. Prior to the amendment of Supreme Court Rule 27.26, V.A.M.R., Ball had another motion under that rule which eventually reached this court. The denial of relief was affirmed. State v. Ball, 432 S.W.2d 265.

In the present proceeding two grounds for relief are advanced. One, considered on the original appeal, relates to the refusal of Ball's trial counsel to file a motion for new trial on his behalf and to appeal the conviction. The second ground is that the prior conviction used to invoke the Second Offender Act was based upon a coerced plea of guilty.

On the first issue, the trial court's conclusion was:

"1. The Trial Court's failure to appoint new counsel for him for the purpose of preparing, filing and presenting a motion for new trial did not prejudice movant's rights and did not violate his constitutional rights. State v. Ball, Mo.Sup., 408 S.W.2d 17, 21(5). Movant failed to sustain the burden of proving the allegations of Ground 8(a) in his motion."

The jury verdict on Ball's trial was returned September 9, 1965. On September 17, Quimby wrote Ball and advised him that he would not file a motion for new trial because he found no error in the trial. He did tell Ball that he would request an extension of time for filing of the motion and a copy of Quimby's letter was attached to defendant's motion for extension of

time. On October 4, defendant filed a pro se "Motion to Proceed in Forma Pauperis" in which he set out that he desired to file a motion for new trial and that his counsel had "abandoned the case." Defendant filed also a motion for appointment of counsel. No action was taken by the trial court on that motion. On October 19, 1965, defendant filed a pro se motion for new trial which provided the basis for the appeal to this court.

On December 18, a hearing was held on defendant's motion for a new trial. When the matter was called, Ball stated that he would like to have an attorney. Quimby was present and stated his position as follows:

"The only thing I could say I said in the letter. It's impossible for me, even though I might study that motion, and I haven't seen it, to present it. Because that would be insincere and not proper in the sense, in a legal sense, for me to present a motion in which I have no belief.

"I did not write a motion because the Supreme Court Rule now reads, requires that we be specific about the errors. A 'shotgun' motion wouldn't avail anything, and we can't write those anymore. And I couldn't point out any error specifically in that trial and I don't think there was any. So therefore, neither this court, nor any court, can procure an argument out of me on a motion for new trial. I stand mute.

"The Courts can do whatever they want to about me, but I didn't file a motion and in my opinion there isn't any—I don't mean to prejudice his case, but I am compelled to state my position."

Ball reiterated his request for an attorney to assist him on the motion. The court heard Ball on the motion and overruled it. Counsel was appointed to represent Ball on his appeal. Later another attorney was substituted who unsuccessfully briefed the appeal.

As shown by the opinion affirming the conviction (408 S.W.2d 17), the lack of assistance of counsel in preparation of the motion for new trial was alleged as a ground of error on the appeal. The allegation was disposed of on the grounds that the appellant had failed to demonstrate any error on the trial which would afford a basis for relief on appeal. In so holding, this court relied on State v. Maness, Mo.Sup., 408 S.W.2d 15.

The requirement of Maness that a defendant denied counsel to assist in the filing of an appeal must demonstrate that there was error on the trial was held inconsistent with the federally protected right of an indigent defendant to counsel at all critical stages of a criminal proceeding in Maness v. Swenson, 8th Cir., 385 F. 2d 943. See Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340. Inasmuch as a motion for new trial is a basic step in the process of perfecting an appeal in this state, Supreme Court Rules 27.20 and 28.02, V.A.M.R., there can be no doubt that the rule applied in Maness and Rodriquez extends to that stage of the proceeding.

■ In view of Ball's continued request for appointment of counsel to assist him in filing a motion for new trial after Quimby notified Ball that he would not do so, the trial court was obliged to give timely attention to Ball's request. Quimby's "no merit" letter could not preclude Ball's right to assistance of counsel in subsequent proceedings in the trial court. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. The trial court's failure to consider Ball's request denied him of his right to representation of counsel at a critical stage of the proceedings.

■ The state argues that there was no denial of counsel because Quimby was never formally relieved and was present when the motion for new trial was heard by the trial court. The right to counsel is the right to assistance of counsel, not merely to his presence. From Quimby's testimony and statement upon the new trial hearing, it is clear that he considered that his duty

to assist terminated with his letter and he acted accordingly. The state's argument has no merit.

The second ground for relief is appellant's claim that his escape conviction, used as the basis for finding him subject to the Second Offender Act (§ 556.280, RSMo 1969, V.A.M.S.) was based upon a coerced plea of guilty which rendered the conviction void. He contends that his plea of guilty to the escape charge was the result of the policy by prison officials of placing inmates of the prison who committed an offense in solitary confinement until the criminal charge based upon such offense was disposed of.

The trial court found, and the testimony of appellant and a prison official, Major Poiry, supports such finding, that the Department of Corrections at the time of appellant's escape and plea of guilty to that charge did "place all inmates charged with crimes committed while in confinement in maximum security where they were required to remain until the charges pending against them were disposed of. This custom was known to the inmates, including movant." That appellant was so treated is undisputed. There was testimony, again largely consistent from appellant and Major Poiry, that prisoners in maximum security were denied privileges afforded other prisoners. The confinement was in "E Hall," since razed, and the cell facilities were bare. Again the trial court's findings in this regard were in accord with movant's testimony.

The movant testified that the purpose of his plea of guilty was "To get out of solitary more than anything else. I wanted out of solitary as quick as possible." He testified that he asked a quard how he could get out of solitary and the guard "said the quickest way was plead guilty to the escape, and they would let me out of solitary." Appellant's testimony was that he was in "solitary" from around September 26, 1960, the date of the escape, until

about a week after he entered his plea on December 13, 1960.

On the issue of the voluntariness of the plea by reason of these matters, the trial court concluded:

"3. The conditions under which movant lived while in E Hall were not such that would require a finding that his plea of guilty to the charge of escape was coerced or was involuntary. Movant has failed to sustain the burden of proving the allegations of Ground (8c) of his motion."

■ This conclusion is not clearly erroneous. In the case of Langdeau v. South Dakota, 8th Cir., 446 F.2d 507, the defendant sought to avoid a guilty plea on the ground that it had been the result of conditions at the jail in which he was confined. In rejecting the contention, the court stated (446 F.2d 508–509 [1–3]):

"Our analysis of the record leads us to conclude that petitioner's discontent with his preconviction existence in the community jail (footnote omitted) served only as a circumstance, perhaps at best motivating the timing of his decision to plead guilty. Petitioner's distaste for his jail food is no more a factor than his interest in obtaining a reduced sentence. As taught in Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), such factors serve only as 'but for' reasons surrounding the guilty plea. The significant test remains yet to be answered: whether the plea of guilty was 'an intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences."' McMann v. Richardson, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970). Using Brady as the paradigm, the fact that the jail conditions 'caused' the plea does not demonstrate that petitioner was unaware of all the surrounding factors and their 'likely consequences.' Here the record unequivocally demonstrates to the contrary. The facts are insufficient to hold as a matter of law that invidious dis-

crimination or psychological coercion induced an involuntary guilty plea."

Langdeau was represented by counsel on his plea of guilty. Ball waived his right to counsel when he entered his plea to the escape charge. However, Ball had the benefit of experience from guilty pleas in a grand larceny charge in 1957 and a forgery charge in 1960. He was not inexperienced in such matters and in this case made no effort to claim that his plea was not "an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." McMann v. Richardson, supra; Collins v. State, Mo. Sup., 450 S.W.2d 186, 190 [4, 5].

On this record, the conclusion of the trial court that movant failed to carry the burden of showing his plea was involuntary is not clearly erroneous. Supreme Court Rule 27.26(j), V.A.M.R.

The conclusion reached on the first point of appellant's motion requires that the judgment and sentence heretofore entered be set aside and the cause remanded to the trial court with directions to order the appellant to be brought before the court and there advised of his right to file a motion for new trial, with the assistance of counsel, and thereafter to proceed to dispose of the cause as if the jury verdict had been returned on the date that appellant shall appear before the court. State v. Frey, Mo.Sup., 441 S.W.2d 11, 15 [4, 5].

Reversed and remanded with directions.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

HOLMAN, P. J., and SMITH, Special Judge, concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., not sitting.

SEILER, Judge (dissenting).

As I understand the undisputed facts, until the escape charge pending against defendant was disposed of, the penitentiary officials would keep him in solitary confinement, without privileges, in a bare cell.

It does not seem to me it is fair for the state to put this sort of pressure on the defendant. Certainly we would not condone a policy of, say, giving a defendant who had charges against him quarter rations until the charges were disposed of, or keeping him in complete darkness, or without clothing. A defendant pleading guilty under these circumstances could understand full well he would be sentenced on the guilty plea and also that he would be relieved of the oppressive conditions. To that extent he would be acting in full awareness of the surrounding factors and likely consequences, but it does not seem to me to follow that the plea is thereby voluntary. It seems to me quite evident that it would not be.

In the Langdeau v. South Dakota case relied on in the principal opinion (CCA 8), 446 F.2d 507, the facts were that the defendant made known to the trial court his dissatisfaction with the jail conditions. The trial court went into the matter fully and offered to give the defendant a jury trial. It was after this that defendant said it would not be necessary because he wanted to plead guilty. Also, defendant had benefit of counsel. Under these circumstances the court found, and properly so, that defendant made a deliberate and voluntary choice to plead guilty.

Nothing of this sort appears in the case before us. Defendant did not have counsel and the record does not show what hap-

pened at the time of the guilty plea, except what defendant testified to at the present 27.26 hearing about it, where he said he pleaded guilty "mostly to get out of solitary." The trial court also found as a fact that defendant asked a guard the best way to get out of solitary and "was told to plead guilty and they would let him out." Defendant was in solitary 90 days before he pleaded guilty on December 13, 1960. He could not have gotten a trial sooner than the Februrary 1961 term, which would have meant at least another 90 days in solitary. On the undisputed facts, the conduct which the state engaged in was not the kind which could properly be imposed on a defendant who is presumed to be innocent and is making up his mind whether to stand trial or plead guilty. A defendant pleading guilty in this situation knows what he is doing, all right, but it cannot be said he is not being improperly influenced.

The fact it has been held that pleading guilty to avoid the possibility of the death penalty does not make the plea involuntary does not meet the point raised here. As stated in Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, there is a "mutuality of advantage" between the state and the defendant in those cases, in precluding "the possibility of the maximum penalty authorized by law." Each side gives up or gains something. In the case before us, there is no mutuality of advantage to the solitary confinement. The advantage of the increased pressure is all on the side of the state.

The trial court found defendant failed to sustain the burden of proving that the solitary confinement policy made his guilty plea involuntary. In my opinion, there is no support for this finding on the undisputed facts before us. As pointed out above, the solitary confinement policy has an inherent extra coercion to it, above the pressure which inevitably accompanies any prosecution, whether defendant is awaiting trial in or out of confinement. There is no way it can be said this improper influ-

ence did not enter into the guilty plea to some degree, and if I am correct in this, then it cannot be said defendant did not carry his burden, especially when the state presented no evidence to the contrary.

I respectfully dissent and would hold the guilty plea should be set aside in the escape case, and, in turn, this would require a new trial in the burglary case where punishment was assessed under the second offender act on the erroneous assumption there was a valid plea of guilty in the escape case.

## ORDER

HOLMAN, Presiding Judge.

On motion of appellant, the order of April 10, 1972, overruling appellant's Motion for Rehearing and sustaining appellant's Motion to Transfer to Court en Banc is hereby set aside.

Motion of appellant to withdraw his Motion for Rehearing or, in the alternative, Motion to Transfer to Court en Banc, is sustained. Said motion is accordingly withdrawn and mandate is ordered to issue.