**Julian SWAIN, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 56143.**

Supreme Court of Missouri,
Division No. 2.

April 9, 1973.

Gary A. Tatlow, Moberly, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Julian Swain appeals from an order denying his Rule 27.26, V.A.M.R. motion to vacate a 3-year sentence entered upon a plea of guilty to a charge of escape. We have jurisdiction since the notice of appeal was filed prior to January 1, 1972.

The only question briefed on this appeal is whether the trial court erred in not vacating the judgment and sentence on the ground that the jail conditions endured by appellant while awaiting trial prevented him from exercising his free choice and will and coerced him into entering a plea of guilty.

While serving an 8-year sentence for manslaughter appellant escaped from prison. Apprehended two days later, he was charged with escape. He testified while awaiting trial on the escape charge he was placed in the "hole" in the Medium Security Prison at Moberly, where he was denied the privileges afforded the general prison population (television, private room, bed and mattress, toilet articles and facilities, washbowl, toilet and shower, time for recreation, reading and letter writing); that he was not allowed to smoke or write or brush his teeth; that he had no bed and slept on the concrete floor in a cell 8 by 10 feet in size. The light was out. He had a toilet bowl but was denied shower, shaving, mail, reading, recreation and exercise privileges and was not allowed out of the cell. After being there five or six days he was transferred to solitary confinement at the penitentiary at Jefferson City in a cell seven by twelve feet in size. He was not allowed to go outside. He was allowed to shower "once a week, sometimes." Occasionally he would be allowed 15–20 minutes a week exercise in the recreation yard. He had a regular bed with a mattress and sheets. He was placed there "right around July of '66" and stayed there until shortly after he entered his plea of guilty on July 26, 1966. Tear gas and water from fire hoses, used by prison guards to quell disturbances caused by other prisoners, were discharged into his cell on one or two occasions, burning his eyes and causing pain and suffering. He testified that when he asked a lieutenant of guards how long he would have to stay in maximum security he was told "until you get some God damn time." (This was denied by the lieutenant.) Appellant was allowed mail and one book a week but did not ask for a book.

Appellant testified that because of these conditions at the two institutions he was in a physical and mental condition which in effect forced him to enter a plea of guilty; that being locked up in the cell "bugged" him; that he wanted out and knew that if he did not get time "there was no telling how long [he'd] be there, no difference how much time [he] got, [he] just wanted out of maximum security, [he] wasn't concerned about any time." He knew he was going to stay there until he "got some time." He was not concerned about advice given him by his lawyer; "wasn't caring to listen to anything, if it had been good advice or bad, [he] was just wanting out of solitary." There were times in solitary when "you just want to get up and tear the cell up, just gets on your nerves." He testified that he "definitely" would not have pleaded guilty to the charge of escape if he had not been held in maximum security. He admitted that he left the Medium Security Prison at Moberly without permission; claimed that he was "forced to escape" before he ended up with some serious charges, because he was having trouble with colored prisoners.

The Assistant Superintendent of Custody testified that it is the policy at Missouri Training Center for Men at Moberly that a prisoner returned and placed in escape status be placed in administrative segregation until arraigned in magistrate court; that he is then transferred to the penitentiary pending disposition of the case.

The trial court found that the claimed coercion or duress was "not such as would nullify the sentence and judgment entered by the court upon movant's plea of guilty"; that movant "exercised his own free choice with a full knowledge of the facts in entering his plea of guilty and having the court assess his punishment rather than trying his case before a jury."

There is no evidence that appellant was beaten or physically abused (other than by the stray water from the fire hoses and the tear gas) while in solitary confinement. Appellant conceded that he made no complaint about jail conditions to the sentencing judge. His 27.26 motion was not filed until three and a half years after sentence was passed. He was placed in solitary confinement as a disciplinary measure, and to have the man out of circulation among the general prison population because of the possibility of another attempt to escape. It is clear that his assignment to solitary confinement was pursuant to administrative rules applying to escapees, and not for the purpose of compelling him to plead guilty to the charge of escape. Solitary confinement is not designed to provide the prisoner with the amenities of the good life. It is a punishing experience. An escaping prisoner knows that if captured he will be deprived of many of the privileges enjoyed by the general prison population. "Dissatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea." Verdon v. United States, 296 F.2d 549, 552 (8th Cir. 1961). See Collins v. State, 450 S.W.2d 186, 190 (Mo.1970);

Coleman v. State, 473 S.W.2d 692, 694 (Mo.1971); Ball v. State, 479 S.W.2d 486 (Mo.1972); State v. Lillibridge, 399 S.W. 2d 25 (Mo.1966), cert. den. 384 U.S. 956, 86 S.Ct. 1579, 16 L.Ed.2d 551. As in Langdeau v. South Dakota, 446 F.2d 507, 508–509 [1–3] (8th Cir. 1971), Swain's discontent with his condition in solitary confinement served only as a collateral circumstance or additional factor motivating his desire to secure an early disposition of the charge. That factor served only as a "but for" reason attending the guilty plea, Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and was not as a matter of law the sole inducing cause. The pertinent inquiry is whether the plea was knowingly entered with appreciation of the surrounding circumstances and likely consequences. Coleman v. State, supra. As pointed out by the Attorney General, there is no question as to appellant's knowledge of the charge and the nature of the proceedings at the time he entered his plea, the range of punishment, the waiver of rights involved in pleading guilty, and that the plea was not the product of physical abuse, promises, threats or improper inducements. Appellant's dissatisfaction with surrounding penal conditions is insufficient to sustain his burden of proving invidious discrimination and psychological coercion inducing an involuntary plea. The facts are insufficient to so hold as a matter of law, and the trial court's findings in this regard are not clearly erroneous.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and FINCH, C. J., concur.