James Earnest CAIN, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 29837.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Bruce H. Beckett, Smith, Lewis & Rogers, Columbia, for appellant.

John D. Ashcroft, Atty. Gen., Jeff W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, for respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

WELBORN, Special Judge.

Appeal from denial of relief after evidentiary hearing upon motion to withdraw plea of guilty upon which appellant had been sentenced to three years' imprisonment on a charge of driving under the influence of narcotics. § 564.445, RSMo 1969.

On April 27, 1976, James Earnest Cain, represented by David Doak of the Public Defender's office, entered a plea of guilty before Judge John M. Cave of the Boone County Circuit Court to a charge of driving under the influence of narcotics. After extended interrogation of the defendant by the court, the plea was accepted and defendant was sentenced to three years' imprisonment, to run concurrently with a five-year sentence previously imposed upon defendant in the Callaway County Circuit Court.

On April 30, 1976, defendant was received at the Missouri State Penitentiary. He was

immediately in isolation in the prison hospital because of lesions on his legs and genitals. Upon admission to the hospital at around 1:45 P.M., he had a temperature of 100 degrees which rose to 104.2 by 4:15 of that date. The lesions were found to have been caused by staphylococcic infections and serology was positive for syphilis. Defendant was treated with penicillin and other antibiotics and remained in isolation in the prison hospital for 17 days.

Sometime around August 1, 1976, Cain filed a pro se motion under Rule 27.26 to set aside his conviction. Counsel was appointed and on October 20, 1976, counsel moved to amend the original motion to include a prayer for withdrawal of his plea of guilty under Rule 27.25, alleging as grounds therefor that defendant's guilty plea had been made while he was suffering from venereal disease and severe staph infection and after he had been refused medical treatment in the Boone County jail for four weeks; that the plea was motivated by a desire to be sent to the State Penitentiary so that he would receive prompt medical treatment for his illness; that the plea was made under coercive circumstances then beyond his control, which forced him to enter an involuntary plea of guilty.

At the hearing on his motion, Cain testified that he had received antibiotics for the "running sores" on his body during the last two days of his incarceration in Florida prior to his extradition to Missouri near the end of March, 1976. After he had been placed in the Boone County jail, the sores kept getting bigger and spreading and about the last week of his stay there "it really started getting real noticeable, real bad." Cain said that during his first two weeks in the Boone County jail, he wrote notes to the head jailer, asking to see a doctor. Two of the notes were given to jailers and one was entrusted to a trustee for delivery, but Cain received no response. He said that he gave a note to a prisoner who was to appear in court for delivery to the judge but the jailer would not permit the prisoner to give the note to the judge. He testified that he made a verbal request to see a doctor about every time he saw a jailer, but the request was not heeded and he received no medical attention in the Boone County jail.

Cain testified that he finally asked his attorney Doak to see what he could do on his behalf on a plea-bargaining arrangement, with a plea to be entered immediately. Doak arranged for a three-year sentence to run concurrently with a five-year Callaway County sentence and Cain accepted the arrangement. According to Cain, he pleaded guilty "to get medical attention."

Cain acknowledged that he did not mention his health problem to Doak. According to Cain, Doak "just didn't act like he was a very good friend of mine. * * * He just wanted to get it over with." " * * * [H]e just wanted to get me out of his hair." Cain further acknowledges that he made a negative response to the following question asked by the judge at the time of the guilty plea in the course of a lengthy and detailed examination of appellant: "All right, sir, now the Court has asked you a good many questions about your plea of guilty. Is there anything that the Court has not inquired about that might in any way be forcing you against your own best judgment to enter this plea of guilty?" Cain's explanation was that if he had mentioned his health problem, " * * * they wouldn't accept my plea of guilty and I'd been sent back to jail * * * in Boone County." The foremost thing in his mind was "getting away from that jail and getting some help" and he was willing to lie to the judge to accomplish that end.

Former fellow prisoners in the Boone County jail testified to appellant's health problems while he was in the jail. The physician who attended prisoners in the jail testified that he gave no treatment to appellant. A medical officer at the penitentiary testified to appellant's condition upon his arrival at that institution. Both medical witnesses stated that an untreated staph

infection could become generalized throughout the body and result in death.

Mr. David Doak testified on behalf of respondent. He stated that he had been appointed to defend appellant on the charge of driving under the influence of narcotics. He testified that the case had been scheduled for trial on one occasion and that he and appellant showed up for trial but before the case was called appellant disappeared. When appellant was returned to the Boone County jail, Doak saw him once or twice there. According to Doak, appellant was under the "distinct impression that there was absolutely no chance now that he could stay out of confinement." Appellant initiated the guilty plea talk and was interested in getting his sentence on the charge to run concurrently with his Callaway County sentence. Appellant said nothing about health problems. He did tell Doak that he wanted to get the guilty plea "done quickly." Doak said that was not an unusual request and he conceded that conditions at the Boone County jail were such that the request was not unusual. "I think the conditions here are much worse than they are at the Penitentiary."

In his findings of fact and conclusions of law, the court stated:

" * * * In view of the plea bargain struck and fulfilled, and the otherwise voluntary plea of guilty in this case, it appears that the conditions in the jail were simply a motivating factor in the timing of this plea of guilty. The evidence does not meet the heavy burden of proof, alluded to but not found to exist in *State v. Taylor, supra*, to establish that the coercive nature of the penal conditions reached the level of cruel and unusual punishment and thus were directly related to the root decision of whether to enter a plea of guilty."

In this court, appellant contends that the preponderance of the evidence established that he was denied needed medical attention while confined in the Boone County jail and that the trial court, therefore, erred in finding that the condition of his confine-

ment did not amount to cruel and unusual punishment. He further contends that the denial of medical care at the Boone County jail rendered the condition of his incarceration there so inherently coercive that it must be held as a matter of law that his plea was tainted to the extent that he should be allowed to withdraw it.

*State v. Taylor*, 529 S.W.2d 427 (Mo.App. 1975), contains a statement of the law which governs this case. In that case, a defendant sought to withdraw his plea of guilty on the grounds that his plea was not entered voluntarily but was the product of coercion arising from several alleged incidents of harassment and beating. In considering the complaint, the court stated (529 S.W.2d at 429–430):

"Appellant's claim of dissatisfaction with jail conditions yielding an involuntary plea is not a novel one. It appears that such complaints have been uniformly dismissed by the courts. Finding the guilty plea to be voluntary, the issue of conditions in the jails is usually dismissed with some variant of the broad statement that:

" 'Dissatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea. They smack instead only of a desire to achieve as soon as possible a new condition of servitude.' *Verdon v. United States*, 296 F.2d 549, 552 (8th Cir. 1961); *Collins v. State*, 450 S.W.2d 186, 190 (Mo.1970); *Hontz v. State*, 491 S.W.2d 289 (Mo.1973); *Dickson v. State*, 449 S.W.2d 576 (Mo.1970), and *Coleman v. State*, 473 S.W.2d 692, 694 (Mo.1971), among others. This broad statement may be understandable where there is a determination by the court that the conditions of the jail were simply a motivating factor in the timing of the plea rather than in the actual decision to enter a plea, *Langdeau v. State of South Dakota*, 446 F.2d 507, 508 (8th Cir. 1971) and *Swain v. State*, 492 S.W.2d 778, 780 (Mo.1973). If, however, the oppressive character of the incarcera-

tion reaches to the level of cruel and unusual punishment, *Johnson v. Lark*, supra, and the defendant could sustain the heavy burden of proof to effectively establish that the coercive nature of the penal conditions was directly related to the root decision of whether to enter a plea, it may be undesirable to write off the defendant's contention under the broad statement of Verdon and cases following. Divisions between the voluntariness of the plea and allegations of a coerced decision to enter that plea seem tenuous."

■ Thus, appellant in this case must have, by the preponderance of the evidence, shown to the satisfaction of the trial court that the condition of imprisonment of which he complains rose to the level of cruel and unusual punishment. If that requirement is satisfied, he is then met with the problem of sustaining the heavy burden of proof to establish that the coercive nature of the prison conditions was directly related to the root decision to plead guilty.

This latter determination must be one of fact for the trial court. Appellant asserts that the facts of this case make the issue one of law. However, no case is cited which has been decided on that basis. The issue is basically whether or not, in view of all of the circumstances, the plea of guilty was knowingly and voluntarily made.

In this case, the correctness of the trial court's assumption as to the character of appellant's confinement is not material if its conclusion that such conditions, whatever their proper characterization, were not directly related to the root cause of the decision to plead guilty is not clearly erroneous. Rule 27.26(j).

Basically the support for appellant's contention that the denial of medical attention was the root cause for his plea of guilty must rest upon appellant's assertions to that effect. However, the trial court had to consider those assertions in the light of appellant's denial at the time of the plea that anything not mentioned by the court in its interrogation was in any way forcing him to plead guilty against his own best judgment. The appellant's explanation of that reply—that if he had complained at that time his plea would not have been accepted—is not so convincingly plausible that it required acceptance of the postsentence hearing assertions.

The testimony of appellant's fellow prisoners at the Boone County jail went only to the question of appellant's need for medical attention and his efforts to obtain it. None of them purported to attempt to assess the seriousness of the conditions of which appellant complained. They did say that appellant "just says he didn't feel very good." Appellant's evidence did show that he was actually ill when he arrived at the penitentiary, three days after his plea and sentencing. There was no evidence that his condition at the time that he initiated the guilty plea discussion with his attorney was the same as when he was received at the prison.

The court also could consider the fact that appellant mentioned no health problem to his attorney. Appellant's explanation that his attorney did not seem to like him and just wanted to get him out of his hair must be viewed in the light of evidence that the attorney had been prepared to try the case at one stage.

The attorney's testimony that appellant initiated the guilty plea suggestion and that appellant's principal concern was in getting his sentence to run concurrently with the Callaway County case is significant. Furthermore the trial court could consider the attorney's testimony that appellant had admitted his guilt to him.

Under all of the circumstances, this court does not find the trial court's conclusion that the condition of appellant's imprisonment was not the root cause of his plea of guilty clearly erroneous. Therefore its judgment will be affirmed.

Judgment affirmed.

All concur.