Earl Eugene NICKENS, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 58023.

Supreme Court of Missouri,
Division No. 2.

March 11, 1974.

Cupples, Cooper & Haller, Inc., Albert J. Haller, Gary H. Sokolik, Clayton, for movant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

FINCH, Judge.

This is an appeal from a denial of appellant's motion under Rule 27.26 [1] to vacate a judgment and sentence of life imprisonment for murder in the first degree. This appeal was pending in this court on April 9, 1973, the date of our decision in Parks v. State, 492 S.W.2d 746 (Mo. banc 1973), and this case is retained for decision pursuant to our order dated April 9, 1973. We affirm.

In 1963 appellant was indicted for first degree murder. Allegedly, he robbed a grocery store and in the course of his subsequent flight by automobile he shot and killed a police officer. He was tried pursuant to § 559.010, RSMo 1959, V.A.M.S.

Appellant's first trial resulted in a mistrial. Tried again, he was convicted and sentenced to death. On appeal, that conviction was reversed for prejudicial argument by counsel for the state. State v. Nickens, 403 S.W.2d 582 (Mo. banc 1966). On retrial in 1967 appellant was convicted and sentenced to life imprisonment.

On November 16, 1967, appellant appeared with counsel and waived his right to file a motion for new trial and his right to take an appeal. On that occasion he took the stand and was interrogated extensively by his counsel and by the court with reference to his proposed waiver and his understanding of the effect thereof. He stated that he understood that if he now waived a motion for new trial and a direct appeal, he could not change his mind and attack the alleged errors at a future time. On the same occasion that he waived his motion for new trial and appeal and was sentenced on the first degree murder charge, he also entered a plea of guilty to a separate charge of robbery in the first degree with a dangerous and deadly weapon. He received a separate consecutive life sentence in that case.

On February 16, 1971, acting pro se, appellant filed under Rule 27.26 a motion to vacate both of the life sentences imposed on November 16, 1967. Counsel was appointed and thereafter he filed a first amended motion to vacate. With reference to the judgment and sentence in the first degree murder case, paragraph 6 of the amended motion alleged the following grounds for relief: (a) The indictment on which appellant was convicted was defective; (b) coerced confessions and admissions by appellant were received in evidence; (c) certain items which were the product of an unlawful search and seizure were received in evidence; (d) the submission of the case against defendant on the basis of the felony murder rule was prejudicially erroneous; and (e) the denial of appellant's motion to dismiss the indictment was error in that the state procured a second indictment by abuse of the grand jury process in order to avoid a court order against striking certain names endorsed on the first indictment.

Subsequently, the motion was amended further by adding paragraph 6(f) which alleged that the appellant's waiver of his right to attack the judgment and sentence was coerced and not voluntary.

---

1. All references are to Supreme Court Rules, V.A.M.R.

An evidentiary hearing on the motion to vacate was scheduled for April 19, 1972. At that time appellant and his counsel appeared and advised the court that they desired to limit their motion to the judgment and sentence in the first degree murder case and that they were amending the first amended motion so as to eliminate those allegations seeking to set aside the judgment and sentence for first degree robbery.

Next, appellant and his counsel advised the court that they were dismissing and withdrawing paragraph 6(f) wherein appellant had alleged that his waiver was coerced and not voluntary and that they would offer no evidence thereon. However, counsel for appellant indicated a desire to proceed with evidence in support of the asserted constitutional violations contained in paragraph 6(a) to (e), inclusive. The court took the position that appellant had waived his right to a review of these constitutional issues unless it was established by appellant that his waiver of his right to file a motion for new trial and to take an appeal did not amount to a knowing and voluntary waiver. Considerable discussion between the court and counsel ensued, including the following:

"THE COURT: Are you taking the position, Mr. Haller, that no intelligent person can voluntarily and knowingly waive his right to a review of constitutional rights?

"MR. HALLER: Yes, Your Honor, I believe that the Constitution requires that the person has that right to review even if he has voluntarily waived it.

"THE COURT: Well, of course, I don't think that's the law. I don't think that's the law. Because if that were so then every plea of guilty, every waiver of appeal, would require an appeal anyway or a review to see whether the Constitution has been fully complied with.

"MR. HALLER: It probably gets down to the issue of whether a person who is a non-lawyer is competent to make an intelligent determination as to violations of constitutional rights, and it would be our position that Mr. Nickens at the time may have voluntarily waived the right but not knowingly because he was not fully aware —

"THE COURT: That's involved in your knowingly and intelligently and voluntarily waiving his appeal and—or entering his plea of guilty. I mean if he—one of the things that is included in that is the knowledge of his constitutional rights. For instance, a person has a constitutional right to a trial by jury. Before he can knowingly and voluntarily waive his right he must be advised and realize he's waiving his right to a trial by jury. A person has a constitutional right to hear the witnesses testify against him and be confronted with the witnesses. Before he can voluntarily and intelligently waive that right, he must be aware of the right. Now, so, the only issue involved here is whether Mr. Nickens was aware of any possible constitutional rights violations when he waived his appeal. Now, if you want to put on evidence with respect to that then we're getting back into that his—to the question of whether he knowingly and understandingly and voluntarily waived his appeal. If you want to say that he didn't—include that he did not understand that he was waiving his constitutional rights involved in this trial, well, then that's a different proposition. I'll hear you on that. I'll hear evidence on that. But, as I understand you wish to waive that. If he understandingly and knowingly when he waived his appeal was waiving any grounds to attack the constitutional basis of his trial in doing so and it's pretty hard to believe that the evidence would support him on that because as I understand most of these allegations set out here were allegations taken right directly from the brief on the first trial, so he must have known that these issues were available to him.

"MR. HALLER: At this point, Your Honor, if I might have leave to discuss this matter further with Mr. Nickens—

"THE COURT: I think you ought to do so. I think you ought to seriously—if you're going to stand upon the point that his constitutional rights have been violated, then the only issue before this court is whether when he waived his notice of appeal he had been advised of these constitutional rights and he had been thoroughly —understood that they existed, and was aware that he had raised them on his first appeal, and that was advised that they—he still had a chance to raise them on the second appeal if he undertook to do that. You better talk to him about it. We'll take a ten-minute recess.

(At this time a temporary recess was taken, after which recess the following proceedings took place:)

"THE COURT: Mr. Haller, have you had an opportunity to talk to Mr. Nickens?

"MR. HALLER: Yes, Your Honor, we have, and he still takes the position that he will waive the right to a hearing in regard to the voluntariness.

"THE COURT: Very well."

Counsel for appellant then advised the court that it was their position that under the provisions of Rule 27.26 as interpreted in Caffey v. State, 467 S.W.2d 857 (Mo. 1971), appellant had an absolute right to have these asserted constitutional violations resolved inasmuch as they had not been decided on any previous appeal. In connection with discussion of Rule 27.26, and particularly subsection (b)(3), the following occurred:

"MR. HALLER: * * * The purpose of that provision is to provide a review of constitutional issues where such were not reviewed on appeal. Our position is there was no appeal. The reason for there being no appeal is really beside the point. Under the 27.26 the whole purpose of this 1967 amendment was to give the review of a constitutional issue where there was no appeal, and in this case it's our contention that there was no review of the constitutional issues and, therefore, this is now the forum at which those constitutional issues can be reviewed.

"THE COURT: There was no review of the constitutional issues because the defendant waived the constitutional issues.

"MR. HALLER: But there is no case that would indicate that that would make a difference."

Subsequently, the court again offered an opportunity to appellant to put on evidence with reference to whether a knowing waiver of constitutional issues occurred. The following discussion appears in the transcript:

"THE COURT: Mr. Haller, I will permit you to present evidence if you wish to present evidence on the issue as to what Mr. Nickens knew at the time he waived his appeal with respect to constitutional issues. If you wish to present evidence on the question—I'm not talking about whether his waiver of his appeal was voluntary in the sense of being coerced or anything like that which I understand he doesn't wish to pursue, but if you wish to present any evidence that Mr. Nickens was unaware to the extent that he was waiving constitutional issues, I'll hear you on it. I'll let you present evidence on it.

"MR. HALLER: It would be our position, Your Honor, that the Court is in error in not permitting us to have a hearing on the constitutional issues at this time; that we should not be limited to merely what his understanding was as to his constitutional—

"THE COURT: Well, is it your position that if he was told that these constitutional questions which were raised on the first appeal could again be raised on the second appeal and that he was aware of that that he could not waive that; that he still can bring them up even though he was aware of those facts?

"MR. HALLER: That would be my opinion under the ruling in the Caffey case, that even though he voluntarily and knowingly waived these, he would still have the right to have that review on appeal.

"THE COURT, You don't want to offer any evidence as to whether he voluntarily and knowingly waived those?

"MR. HALLER: He—Mr. Nickens says that he does not."

After the foregoing declination by appellant, the state called Mr. J. Paul Allred, who had represented appellant throughout the three trials and one appeal and who also represented him at the time he waived the filing of a motion for new trial and an appeal. Mr. Allred testified at length that he had discussed with appellant all of the issues involved in paragraph 6(a) through (e), inclusive. These were issues which had been raised and briefed on appeal to the Supreme Court following the first conviction but they were not decided by the court at that time in view of its reversal of the conviction on the basis of improper argument. Appellant was furnished a copy of the brief on appeal. These same issues were raised in the subsequent trial at which appellant was convicted and sentenced to life imprisonment.

Allred testified that the appellant was very intelligent and knew of and understood the questions involved. In fact, he had read considerable law while he was incarcerated and he helped counsel by suggesting one of the constitutional issues with respect to an attack on some of the evidence on the theory that it fell within the doctrine of being inadmissible as fruit of the poisoned tree.

Allred testified that in discussing the constitutional issues he pointed out to appellant that he thought their chances were good on some of the issues, particularly with reference to the admission of some of the evidence, whereas on other issues raised he thought their chances were not

so good. Allred testified that appellant was neither coerceed nor misled with reference to his appeal or the waiver thereof, and that appellant himself made the final choice to waive filing of a motion for new trial and to waive taking an appeal. He testified that appellant desired to avoid the possibility of a reversal and a retrial of the murder charge because the death penalty, which then was still a possibility, might be imposed. In addition, appellant wanted to avoid the hazard involved in a trial on the charge of robbery with a dangerous and deadly weapon because in that case many of the constitutional questions on which he was relying in the murder case would have no application.

After Mr. Allred testified, counsel for appellant made an offer of proof of evidence with respect to the alleged constitutional issues raised in paragraphs (6)(a) through 6(e), but this offer was rejected by the court in view of the fact that there was no issue raised and no evidence offered to show that the waiver of the motion for new trial and an appeal was other than a voluntary and knowing waiver.

The trial court made detailed findings of fact and conclusions of law in which the motion to vacate judgment and sentence was overruled.

On this appeal the parties clearly focus on the single issue presented. . Appellant's brief states it thus: "The sole question involved in this appeal is whether Appellant may raise, present and be heard on alleged trial errors affecting his constitutional rights where he had specifically waived the right to appeal, and, in fact, no appeal had been taken, and where there is no claim that such waiver was not voluntary. It is Appellant's position that such matters are the proper subject of his motion pursuant to Criminal Rule 27.26 and the Rule specifically says so."

In taking this position, appellant relies on subsection (a) of Rule 27.26, which states: " * * * This Rule does not

suspend the rights available by habeas corpus but rather prescribes the procedure to be followed in seeking the enforcement of those rights. It includes all relief heretofore available in any court by habeas corpus when used for the purpose of seeking to vacate, set aside or correct a sentence, plus relief not available by habeas corpus"; and on subsection (b)(3) which provides that: "* * * Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal." He also relies on the decisions of this court in Caffey v. State, 467 S.W.2d 857, 859 (Mo.1971), and Gailes v. State, 454 S.W.2d 561, 563 (Mo. 1970).

■ It is not the purpose of Rule 27.26 to give an absolute right in each and every instance to have a post conviction determination of alleged denial of constitutional rights which have not been determined on direct appeal or on appeal from a prior post conviction proceeding, and the cases cited by appellant do not hold that such right exists. In Caffey the direct holding was that movant was entitled to no relief because certain of his asserted constitutional rights had been considered or resolved against him on his direct appeal, and because another such asserted right had been waived since it was a matter known to him at the time he filed a prior 27.26 proceeding and should have been asserted therein. Thus, that case actually recognizes that one may effectively waive a hearing on a constitutional question so that it may not be heard in a proceeding under Rule 27.26, even though that question has not been ruled upon either on direct appeal or in an appeal from a prior 27.26 proceeding.

In the Gailes case the precise matter decided was that an asserted constitutional issue raised in the 27.26 motion had been decided on the direct appeal and hence could not be heard and passed upon again. The court said this was true even if the appellant had a new citation or a somewhat different theory for seeking a favorable decision on the question previously ruled upon. In so deciding, this court quoted from subsection (b)(3) of Rule 27.-26 and said: "It will be noted that the rule provides that errors affecting constitutional rights may be raised even though such could have been raised on appeal. The purpose of that provision is to provide a review of constitutional issues where such were not reviewed on appeal."

■ That language was not intended to mean that subsection (b)(3) in all events gives a defendant the right to a post conviction review of an asserted constitutional deprivation if he has not previously had an appellate determination of that question. There was no occasion in the Gailes case for that matter to be determined, and the court was simply observing generally that the rule does provide a means of determining such questions when the factual situation so dictates. There are instances where a defendant would be entitled to such a post conviction determination of constitutional issues not resolved by some prior appeal. For example, where movant alleged that he was pressured or coerced into waiving his right to appeal by means which violated his constitutional rights, he was adjudged to be entitled to an evidentiary hearing in a 27.26 proceeding to determine whether he was entitled to relief available under provisions of that rule. Noble v. State, 477 S.W.2d 417 (Mo.1972). The general language of (b)(3) was intended to provide for such situations in order to protect a defendant from uninformed or involuntary waiver of known constitutional rights. It was not intended to and does not give a right to collaterally attack alleged constitutional deficiencies which the defendant has voluntarily and knowingly waived as a basis for final disposition of his case.

Such a conclusion is consistent with the rationale of the decision of the Supreme Court of the United States in Tollett v.

Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), wherein the court held that where a defendant in a state court, on advice of counsel, pleads guilty, he may attack the plea on the basis of alleged deprivation of constitutional rights antedating the plea only after successfully attacking the voluntary and intelligent character of that guilty plea by showing that counsel's advice was not within the standards laid down in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Judgment affirmed.

All of the Judges concur.