Jack Lee NOBLE, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 28325.

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

Motion for Rehearing and/or Transfer Denied June 1, 1977.

Application to Transfer Denied July 11, 1977.

Thomas A. Vetter, Cook, Vetter & Doerhoff, Jefferson City, for movant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

SOMERVILLE, Judge.

As mirrored by this appeal from an adverse ruling on a Rule 27.26 motion, the aftermath of the 1954 prison riot at the Missouri State Penitentiary, Jefferson City, Missouri, still stalks the courts of this state. During the course of the riot an inmate was murdered. Shortly after the riot was quelled Jack L. Noble,[1] appellant herein, and six fellow inmates were jointly indicted by a Cole County Grand Jury for first degree murder. Severances were subsequently obtained and each accused was separately tried.

---

1. Noble was serving a fifteen year sentence for armed robbery at the time the riot occurred.

Noble stood trial in the Circuit Court of Cole County where a jury on March 29, 1955, found him guilty of first degree murder and assessed his punishment at life imprisonment. Although a timely motion for new trial was filed, Noble, in writing,[2] subsequently withdrew it, waived his right to appeal, and requested the trial court to enter judgment and pronounce sentence in accordance with the verdict returned by the jury. The trial court on July 18, 1955, acting thereon, entered judgment and pronounced that Noble be sentenced to life imprisonment. Whether Noble voluntarily waived his right to appeal courses throughout this and a series of prior post-conviction proceedings which he initiated. The earlier attempts to obtain relief warrant being mentioned in some detail at this time, in conjunction with certain basic and undisputed facts, in order to put the present appeal in proper perspective.

Immediately after the indictment was returned (November 23, 1954), Noble and his six co-indictees were transferred from the general prison population and separately placed in "segregated confinement".[3] More particularly, Noble was placed in "B basement" where he was held in "segregated confinement", except for intervals of temporary transfer attendant to his trial, until September 11, 1955, at which time he was returned to the general prison population.

On July 1, 1960, Noble, acting pro se, filed a Rule 27.26 motion in the Circuit Court of Cole County seeking to vacate his life sentence. Therein, Noble alleged that he was "induced" to waive his right to appeal because his counsel told him "that an agreement had been reached between counsel for defendant and counsel for the state, whereby he would be 'immediately' released from solitary confinement if he would agree to waive his right of appeal." For

some unexplained reason this motion was "dismissed without an evidentiary hearing", and on January 1, 1961, Noble began serving the life sentence.

On February 4, 1964, Noble, acting pro se, filed a petition for writ of habeas corpus in the Circuit Court of Cole County which, by mutual agreement of the parties, was treated as a motion for relief under Rule 27.26. The thrust thereof centered around Noble's contention that he involuntarily waived his right to appeal because defense counsel, the prosecuting attorney, and prison authorities "entered into a conspiracy and agreement to act in concert and togather [sic] to intimidate, induce, and coerce petitioner to withdraw his motion for a new trial and waive his right to appeal . . ." in exchange for a promise to release him from "segregated confinement". Following an evidentiary hearing, the trial court "found the issues" against Noble and entered judgment denying him any post-conviction relief. On appeal, the Supreme Court, after reviewing the matter de novo (per former Rule 28.05 which was repealed by order adopted January 9, 1967, effective September 1, 1967), held that Noble had "failed to sustain the burden of establishing the allegations of his petition" and affirmed the judgment entered by the trial court. *State v. Noble,* 387 S.W.2d 522, 527 (Mo.1965). A fair reading of *State v. Noble,* supra, discloses that the Supreme Court found, after an extensive review and discussion of all of the evidence (set forth at length in the opinion), that no "conspiracy" or "agreement" existed, as alleged by Noble, to induce him to trade off his right to appeal for his release from "segregated confinement". This conclusion is buttressed by the following statement in *State v. Noble,* supra, at 527: "Although the prospect of continued solitary confine-

---

**2.** "Comes now the defendant in the above entitled cause and hereby withdraws his Motion for a New Trial heretofore filed in this cause, and hereby waives his right to appeal, and requests the Court to enter judgment imposing sentence upon him upon the verdict of the jury. Dated this 18th day of July, 1955.

[s/d]  Jackie Lee Noble
Defendant.

[s/d]  S. W. James, Jr.
S. W. JAMES, JR.
[s/d]  Richard L. Daly
RICHARD L. DALY
Attorneys for Defendant."

**3.** The term "segregated confinement" is sometimes denoted in this and other opinions herein referred to as "solitary confinement".

ment might have been a factor in Noble's mind, it was not shown to have been the basis of any bargain between his attorney and the state officials in order to defeat Noble's right of appeal."

Having failed to obtain post-conviction relief in the state courts, Noble next filed a petition for writ of habeas corpus in the United States District Court, Western District of Missouri, Central Division. Once again Noble's principal contention, albeit cast in slightly different language, was that "his court appointed counsel, the Prosecuting Attorney and the warden of the prison conspired to and did unconstitutionally deprive him of his right of appeal by coercing him into withdrawing his motion for new trial and waiving his right to appeal in exchange for his release from solitary confinement." *Noble v. Swenson,* 285 F.Supp. 385, 386 (W.D.Mo., 1968). In denying the relief sought by Noble by way of his petition for writ of habeas corpus, the federal district court, at 387, held: "We find that the Supreme Court of Missouri exercised its power of *de novo* review and that it reliably found the facts as stated in its opinion in *State v. Noble,* supra [*State v. Noble,* 387 S.W.2d 522 (Mo.1965)]. We make this finding as a result of our independent study of the transcript of the hearing before Judge Blair, the exhibits attached thereto and the opinion of the Supreme Court of Missouri in petitioner's 27.26 proceeding. We further find that petitioner was afforded a full and fair evidentiary hearing on the contention presented in his Rule 27.26 motion. Deferring to the Missouri Supreme Court's findings of fact and applying the federal law independently, we find and determine that petitioner was not unconstitutionally denied his right of appeal by a conspiracy between the court-appointed attorney, the Prosecuting Attorney, and the officials of the Missouri State Prison." The federal district court however took cognizance, *Noble v. Swenson,* supra, at 387, that Noble (in his brief) attempted to raise an additional issue, to-wit, "it is possible that the State of Missouri in the operation of Missouri State Prison, has coerced petitioner into giving up his right to appeal", never before presented

to the state courts of Missouri, and, perforce, with respect to which Noble had not exhausted his state court remedies.

Not easily rebuffed, Noble seized upon the decision handed down by the federal district court in *Noble v. Swenson,* supra, and on July 2, 1968, filed another Rule 27.26 motion in the Circuit Court of Cole County seeking to vacate the life sentence pronounced on July 18, 1955. Twelve of thirteen grounds alleged therein related to matters which occurred prior to withdrawal of his motion for new trial and waiver of his right to appeal. The remaining one, 8(k), sweepingly alleged that he "was pressured and coerced into abandoning his right to appeal by means that violated his constitutional rights." The trial court, without affording Noble an evidentiary hearing, and after making what was designated "findings of fact" and "conclusions of law", denied the relief sought. Suffice it to say, the trial court held in its "conclusions of law" that all the asserted grounds for relief were not cognizable under Rule 27.26 save 8(k) which had previously been adjudicated adversely to Noble in *State v. Noble,* supra. Noble's appeal therefrom is reported in *Noble v. State,* 477 S.W.2d 417 (Mo.1972). Noble's principal contention on this appeal was that the trial court erred in denying him an evidentiary hearing on ground 8(k) on the premise that it had been adjudicated adversely to him in *State v. Noble,* supra. The Supreme Court in *Noble v. State,* supra, at 420, noted that *State v. Noble,* supra, merely determined that Noble had failed to sustain his burden of proving an "arrangement" between defense counsel, the prosecuting attorney, and prison authorities to coerce him into waiving his right to appeal by detaining him in solitary confinement until he did so. The court went on however, and heeding *Noble v. Swenson,* supra, found that ground 8(k), "although made and paraphrased inartfully", was an attempted assertion of the ground for relief recognized in *Noble v. Swenson,* supra, i. e., that "it is possible that the State of Missouri in the operation of Missouri State Prison, has coerced peti-

tioner into giving up his right to appeal" and, viewed in that context, constituted a ground for relief undetermined by *State v. Noble,* supra. The Supreme Court reversed the judgment entered by the trial court and remanded the case for an evidentiary hearing with leave given to Noble, *State v. Noble,* supra, at 420 "to amend the present motion to vacate in order to clarify or expand any allegations therein or to include any and all other known grounds for relief as required by Criminal Rule 27.26(c), V.A. M.R." After the case was remanded to the trial court, Noble's Rule 27.26 motion was extensively amended, an evidentiary hearing was held, findings of fact and conclusions of law were made and judgment was entered denying the relief prayed for. The quintessence of the findings of fact, conclusions of law, and judgment denying relief being that Noble failed to sustain his burden of proving that waiver of his right to appeal was involuntary and coerced, and that his overriding motive for doing so was to escape the possibility of imposition of the death penalty upon retrial. The appeal pending before this court is one taken by Noble from the judgment just mentioned.

By way of amending his Rule 27.26 motion, Noble set forth eight[4] grounds which he claims entitled him to relief. The first three grounds, designated 8(a), 8(b) and 8(c), may be paraphrased as follows: 8(a), that the state's "manner of operating the State Penitentiary" coerced him into waiving his right to appeal because until he did so he would not be released from "segregated confinement" and transferred to the general prison population; 8(b), that waiver of his right to appeal was "involuntary" and "coerced" because induced by an agreement between defense counsel, the prosecuting attorney, and prison authorities that in exchange for doing so he would be released from "segregated confinement" and returned to the general prison population; and 8(c), that waiver of his right to appeal was "involuntary" and "coerced" because his counsel failed to secure his release from "segregated confinement" when counsel

knew that said confinement was unjustified and that Noble would forfeit his right to appeal, if necessary, to abate said confinement. Compositely, Noble contends that for reasons set forth in grounds 8(a), 8(b) and 8(c) he was deprived of his constitutional rights (federal and state) of due process and equal protection and, further, for reasons set forth in grounds 8(b) and 8(c) he was deprived of his constitutional right (federal and state) of assistance of counsel. The remaining five grounds (and subparts) relate to matters associated with the jury trial which culminated in the sentence presently sought to be vacated. For reasons which hereinafter appear self-evident, it is unnecessary to distinguish between those which are "mere trial errors . . . to be corrected on appeal", and not cognizable in a Rule 27.26 proceeding, and those which are "trial errors affecting constitutional rights" and cognizable in a Rule 27.26 proceeding. Rule 27.26(b)(3).

Prior to the evidentiary hearing in the trial court, Noble filed a motion for preparation of a transcript of all proceedings in the underlying homicide trial. This motion was denied in part and sustained in part as the trial court ordered and directed the court reporter to prepare and file a transcript covering only those proceedings which occurred after March 29, 1955, the date the jury returned its verdict finding Noble guilty of murder in the first degree and assessing his punishment at life imprisonment. The evidentiary hearing held by the trial court was limited to the three grounds (8(a), 8(b) and 8(c)) which form the basis for Noble's assertion that waiver of his right to appeal was "involuntary" and "coerced".

The points on appeal raised and relied upon by Noble, substantially condensed, are: (1) the findings, conclusions and judgment of the trial court that he failed to sustain his burden of proving that waiver of his right to appeal was "involuntary" or "coerced", and that the saturating motive for doing so was to escape possible infliction of the death penalty upon retrial, are clear-

---

4. The sixth purported ground contains eight subparts.

ly erroneous; (2) the trial court erred in limiting his motion for preparation of a transcript of the underlying trial to matters occurring subsequent to March 29, 1955 (the date the jury returned its verdict); (3) the trial court erred in failing to afford him an evidentiary hearing on the grounds appertaining to matters associated with and occurring at the underlying trial up to the time the jury returned its verdict; and (4) the trial court erred in failing to make any findings of fact and conclusions of law with respect to the latter mentioned grounds.

■ Clearly, the burden of proof with respect to grounds 8(a), 8(b) and 8(c) rested upon Noble. Rule 27.26(f). Appellate review of Noble's Rule 27.26 proceeding is circumscribed to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous. Rule 27.26(j). Guided by these rules, the three component grounds relied upon by Noble, purportedly evincing that waiver of his right to appeal was "involuntary" or "coerced", will be separately addressed.

■ The findings, conclusions and judgment of the trial court are not clearly erroneous as to ground 8(a) of Noble's Rule 27.26 motion—that the state's "manner of operating the State Penitentiary" coerced him into waiving his right to appeal because until he did so he would not be released from "segregated confinement" and transferred to the general prison population. The evidence discloses that as a matter of administrative prison policy every inmate charged with commission of a criminal offense occurring within the confines of the prison was held in "segregated confinement" until completion of his trial. Moreover, with respect to Noble and his fellow co-indictees, a temporary policy was apparently adopted to keep all seven in "segregated confinement" until all of their trials were completed. The record does not give any hint as to what prompted the adoption of these policies. Parenthetically, they would appear to be justified for several reasons—to protect such inmates from being exposed to the possibility of retaliatory

harm at the hands of fellow inmates in the general prison population, to preclude the potentiality of danger to other prisoners in the general prison population, and generally to maintain some semblance of "law" and "order" within the confines of the prison.

■ After being indicted (November 23, 1954) Noble was placed in "segregated confinement" and held there [5] until September 11, 1955, a date which coincided with the completion of the trial of the last of the seven co-indictees. He was the first of the co-indictees to be released from "segregated confinement". Noble described the conditions of his "segregated confinement" as follows: he was confined in one of sixteen cells in "B" basement of the prison; his individual cell was approximately 7½ feet by 6 feet in size; "[m]ost of the time" he didn't "have clothes"; he had a "tick bag filled with straw" to sleep on; he was fed twice a day; once a week he was taken from his cell, in handcuffs, for a shower; he had no reading material; the only windows were ten feet from the cell fronts and they were "painted over" and "kept closed"; and he was taken from his cell to the "central center" on various occasions to talk to his lawyer. These conditions, concededly, were not designed to afford inmates placed in "segregated confinement" the amenities, limited though they might be, enjoyed by inmates in the general prison population. In conjunction with ground 8(a), Noble testified that he withdrew his motion for new trial and waived his right to appeal "[t]o get out of solitary confinement". He continued to hammer this theme by way of similar statements throughout the entire hearing. Assessment of Noble's credibility was within the province of the trial court. *Campbell v. State,* 515 S.W.2d 453, 456 (Mo. 1974); and *Powell v. State,* 528 S.W.2d 767, 767 (Mo.App.1975). Moreover, in view of Noble's highly personal and decidedly partisan interest in the outcome of the Rule 27.26 proceeding, the trial court could and obviously did reject Noble's testimony in the respect just mentioned. *Thurman v.*

5. Except for temporary transfers incident to his trial.

*State,* 523 S.W.2d 521, 528 (Mo.App.1975); and *Cooper v. State,* 520 S.W.2d 666, 668 (Mo.App.1975). The fact that Noble was placed in "segregated confinement" prior to trial refutes any notion that it was done for the purpose of coercing him into waiving his right to appeal. Noble does not contend otherwise. Also deemed pertinent is the fact that Noble had been in "segregated confinement" approximately five months when he filed his motion for new trial.[6] At that point of time it appears that the conditions of "segregated confinement" were not considered so offensive or intolerable by Noble as to dissuade him from seeking a new trial. This, at least circumstantially, tends to vitiate Noble's contention that conditions attendant to his "segregated confinement" were, per se, the significant contributing factor for waiving his right to appeal. The tack taken by Noble in ground 8(a) to avoid the consequences of his own voluntary act is far from novel. It has frequently been taken to no avail in connection with attempts to brand pleas of guilty as involuntary or coerced. As pungently stated in *Verdon v. United States,* 296 F.2d 549, 552 (8th Cir. 1961), "[d]issatisfaction with a penal condition, brought about by one's own conduct, and a hope that by a guilty plea a different kind of incarceration might be achieved are scarcely factors of involuntariness in a plea. . . . [t]hey smack instead only of a desire to achieve as soon as possible a new condition of servitude." In accord, see: *Swain v. State,* 492 S.W.2d 778, 780 (Mo.1973); *Coleman v. State,* 473 S.W.2d 692, 694 (Mo.1971); and *Collins v. State,* 450 S.W.2d 186, 190 (Mo. 1970).

The findings, conclusions and judgment of the trial court are not clearly erroneous as to ground 8(b) of Noble's Rule 27.26 motion—that waiver of his right to appeal was "involuntary" and "coerced" because induced by an agreement between defense counsel, the prosecuting attorney, and prison authorities that in exchange for doing so he would be released from "segregated confinement" and returned to the general prison population. By stipulation of the parties, a copy of the transcript on appeal in *State v. Noble,* supra, was, in its entirety, admitted as an exhibit at the evidentiary hearing which precipitated the present appeal. Although not all of the witnesses whose testimony appears in the referred to transcript were called at the evidentiary hearing now under review, it can fairly be said that the testimony of those who were called and who testified, so far as pertinent to ground 8(b), was, for all practical purposes, repetitious of that contained in the referred to transcript. All of the exhibits contained in the referred to transcript were separately reintroduced at the evidentiary hearing from which this appeal stems. An additional exhibit, Noble's "Committment Record Card", was also introduced, as well as testimony with reference to the transfer of the co-indictees from "segregated confinement" to the general prison population. Said testimony, along with testimony with reference to the additional exhibit, can only be described as hazy, confusing and inconclusive. It posed, but failed to definitely resolve, whether Noble's transfer from "segregated confinement" to the general prison population on September 11, 1955, was effected by action of the prison Classification Committee as was the case with respect to the co-indictees.

The trial judge who heard and denied Noble's present Rule 27.26 motion had before him all the evidence which was before the Supreme Court in *State v. Noble,* supra, the thrust of ground 8(b) was identical to that litigated and ruled adversely to Noble therein, and no additional or contradictory evidence of substance or of a persuasive nature was presented. It is patently obvious that the trial judge, in ruling and disposing of ground 8(b), did not deem *State v. Noble,* supra, as controlling under the doctrine of res judicata. Instead, the trial judge, perhaps because Noble had not been represented by counsel at the evidentiary hearing which occasioned the appeal in *State v. Noble,* supra, wisely chose to con-

6. Same was filed on April 29, 1955.

sider and rule ground 8(b) on its merits on the basis of all the evidence before him. In doing so, he concluded that Noble had failed to prove that defense counsel, the prosecuting attorney, and prison authorities had conspired or agreed to induce him to trade off his right to appeal for his transfer from "segregated confinement" to the general prison population. The most telling and persuasive testimony in this and the prior hearings was that of James T. Riley, Prosecuting Attorney of Cole County at the time in question, who unequivocally stated under oath on repeated occasions that no conspiracy or agreement ever existed to induce or coerce Noble into waiving his right to appeal. Ergo, the findings, conclusions, and judgment of the trial court apposite ground 8(b) are not clearly erroneous. To hold otherwise would be tantamount to rebuffing the well reasoned decision of the Supreme Court of Missouri in *State v. Noble,* supra, and the well reasoned decision of the United States District Court, Western District of Missouri, in *Noble v. Swenson,* supra.

█ The findings, conclusions and judgment of the trial court are not clearly erroneous as to ground 8(c) of Noble's Rule 27.26 motion—that waiver of his right to appeal was "involuntary" and "coerced" because his counsel failed to secure his release from "segregated confinement" when counsel knew that said confinement was unjustified and that Noble would forfeit his right to appeal, if necessary, to abate said confinement. The thrust of this ground was not dwelled upon at any length or clearly explicated in Noble's brief. As garnered from the transcript, Noble appears to have espoused to counsel a dissatisfaction with "segregated confinement" and a desire to be transferred therefrom following his trial and prior to waiving his right to appeal. The evidence conclusively demonstrates that S. W. James, Jr., now deceased,[7] one of two attorneys who represented Noble at the homicide trial, made a concerted effort to effect Noble's transfer from "segregated

confinement" to the general prison population and that Noble was, in fact, the first of the indictees to be so transferred. Pragmatically viewed, ground 8(c) rattles the same theme inherent in grounds 8(a) and 8(b) asserted by Noble, namely, according to Noble, the overriding compulsion for waiving his right to appeal was to escape the rigors of "segregated confinement". The totality of the evidence which precludes the findings, conclusions and judgment of the trial court appertaining to grounds 8(a) and 8(b) from being stamped as clearly erroneous impels the same conclusion with respect to ground 8(c).

It is highly appropriate at this point to shift the focal point of this opinion to certain signal facts supporting the trial court's conclusion that the prime and overriding motive which prompted Noble's waiver of his right to appeal was to avoid running the gauntlet of the death penalty at a new trial. When Noble waived his right to appeal (July 18, 1955), the death penalty was still viable and a statutorily prescribed punishment for first degree murder. A letter dated September 2, 1955, from S. W. James, Jr. to Noble, admitted into evidence by stipulation of the parties, contains a perspicuous statement of undeniable significance: "At the time of the hearing on your motion for new trial, if you will recall, this matter was discussed with you by the writer and Mr. Daly[8] in detail, and at that time you admitted very readily that, under the law of the evidence, it would be impossible for you to obtain a judgment of acquittal, and that should you obtain a new trial, either by the circuit court or on appeal to the Supreme Court, you would, of course, face the prospects of getting a more severe sentence than the life sentence imposed upon you. Under that theory, of course, and which I believe is the correct one, it would be a useless proposition to go through the proceeding to obtain a new trial when, as a matter of fact, you might be seriously jeopardized thereby." Noble was confronted

---

**7.** S. W. James, Jr. died on October 31, 1961.

**8.** Co-counsel with S. W. James, Jr. during Noble's first degree murder trial.

with this at the evidentiary hearing and admitted that he recalled the discussion and that it was "very true", the substance of what was related was "considered" by him, and that James' account of the discussion as having been "readily" admitted by him [Noble] at the time it occurred "was the case, yes". Suffice it to say, this alone was far more than a paucity of evidence to support the trial court's finding that Noble waived his right to appeal because of an insatiable desire to avoid exposing himself to infliction of the death penalty, a rampant possibility, indeed a clear and present danger, at the time.

By way of summation regarding grounds 8(a), 8(b) and 8(c), the crux of Noble's argument is that his after-the-fact self-serving statements as to his prior subjective state of mind were beyond the pale of disbelief and thereby destroyed the hard evidence which contradicted them. The trial court thought otherwise and this court holds that it was entirely justified, factually and legally, in doing so. Consequently, its findings, conclusions and judgment are not erroneous, much less clearly erroneous.

Noble's remaining three points, i. e., that the trial court erred in not ordering a complete transcript of the first degree murder trial, in not affording him an evidentiary hearing on the other five grounds set forth in his Rule 27.26 motion, and in not entering findings of fact and conclusions of law with respect thereto, lend themselves to being addressed and disposed of jointly. The rationale employed by the trial judge in denying Noble a complete transcript of the homicide trial, and in limiting the evidentiary hearing on his Rule 27.26 motion to grounds 8(a), 8(b) and 8(c), first surfaced when Noble's motion for production of the trial transcript was ruled on. At that time the trial judge, in essence, advised the parties that whether Noble knowingly and voluntarily waived his right to appeal appeared to be the pivotal question around which all other grounds revolved. As perceived by this court, the trial judge apparently reasoned that if Noble did so knowingly and voluntarily, all purported grounds associated with the underlying trial were

waived, or, if he did so involuntarily, his right to appeal would be reinstated and all such grounds could be raised on direct appeal. *Nickens v. State,* 506 S.W.2d 381, 386 (Mo.1974), authoritatively supports the first aspect of the bifurcated reasoning attributed to the trial judge. In *Nickens,* the movant in a Rule 27.26 proceeding expressly refrained from introducing any evidence with regard to whether he had knowingly and voluntarily waived his right to appeal the principal or underlying criminal action. In his Rule 27.26 proceeding, however, he adamantly insisted that he was entitled to raise, present and be heard on alleged trial errors affecting his constitutional rights notwithstanding the fact that they antedated the voluntary waiver of his right to appeal. Regarding Rule 27.26 and the related issue at hand, the court in *Nickens,* at 386, held: "It was not intended to and does not give a right to collaterally attack alleged constitutional deficiencies which the defendant [movant] has voluntarily and knowingly waived as a basis for final disposition of his case." In so holding, the court equated knowingly and voluntarily waiving the right to appeal with knowingly and voluntarily entering a plea of guilty. See also *Williams v. State,* 530 S.W.2d 740, 742 (Mo.App.1975).

On February 15, 1974, during the interim between the ruling on Noble's motion for production of a complete trial transcript and the evidentiary hearing conducted on his Rule 27.26 motion, a "pre-trial conference" was held. According to the record, Noble, in person and accompanied by counsel, and the Assistant Prosecuting Attorney of Cole County on behalf of the state, appeared and participated in the "pre-trial conference", at which time the following order was entered: "Trial is set for hearing by agreement of parties as to Paragraphs 8(a), 8(b) and 8(c) for April 19, 1974, at 9:00 A.M." At the beginning of the evidentiary hearing, i. e., "trial", on April 19, 1974, the trial judge pointedly inquired, "Gentlemen, as I recall the Court's earlier order, which was entered on February 15, the hearing today is for the purpose of hearing evidence

on Paragraphs 8(b), 8(a) and 8(c); is that correct?" In response to this inquiry, Noble's counsel replied, "Correct". This court finds that such constituted an affirmative concurrence on Noble's part with the trial court's reasoning that findings, conclusions and a judgment as to grounds 8(a), 8(b) and 8(c), would obviate the necessity of an evidentiary hearing as to the remaining grounds asserted by Noble in his Rule 27.26 motion and that Noble, in fact, waived an evidentiary hearing with respect thereto for that reason. Having done so, a complete trial transcript would have been superfluous.

The findings, conclusions and judgment of the trial court regarding grounds 8(a), 8(b) and 8(c) herald an inescapable ultimate fact, namely, Noble knowingly and voluntarily waived his right to appeal. In addition to the array of evidence heretofore set forth, Noble testified that during the present evidentiary hearing, the following colloquy occurred between himself and the trial judge who conducted the homicide trial and who pronounced sentence after he waived his right to appeal: "He asked me if I knew what I was doing. I told him, yes, I did. He told me he thought—did I realize that he had not ruled on the new trial motion, and he may order a new trial. I told him I did. And he told me that I was waiving my right to an appeal, was I aware of that. I told him yes, I was."

When the entire record is syllogistically viewed, this court concludes that Noble twice precluded any legitimate right to complain about an incomplete transcript or failure to afford an evidentiary hearing on the remaining grounds asserted in his Rule 27.26 motion—first, when he knowingly and voluntarily withdrew his right to appeal, and second, when he consented to limiting the evidentiary hearing to the issues tendered by grounds 8(a), 8(b) and 8(c). Moreover, the judgment rendered by the trial court denying Noble any and all post-conviction relief, although summary in nature as to all grounds save 8(a), 8(b) and 8(c), may be said to be equivalent to findings and conclusions that all other grounds were not subject to being collaterally attacked under a theory which comports with that advanced and relied upon in *Smith v. State*, 513 S.W.2d 407, 412 (Mo. banc 1974) and *Hogshooter v. State*, 514 S.W.2d 109, 113 (Mo.App.1974). For reasons stated, Noble's three remaining points are ruled adversely to him.

This court feels constrained to observe that Rule 27.26 was never intended to create an interminable right to seek vacation of a criminal sentence.

Judgment affirmed.

All concur.