**Rex PECK, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55850.**

Supreme Court of Missouri,
Division No. 2.

June 14, 1971.

Miller, Fairman, Sanford, Carr & Lowther, F. William Joyner, Springfield, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

For the offenses of burglary and grand stealing appellant was sentenced to two consecutive five-year terms of imprisonment in the Department of Corrections on May 2, 1963, upon his pleas of guilty thereto. He now seeks to withdraw the pleas of guilty under Rule 27.25, V.A.M.R.,

and to vacate his sentences under Rule 27.26, V.A.M.R., because, as alleged, they were entered involuntarily by reason of threats and ill-treatment by jail custodians and the sheriff, who died in 1967.

At the evidentiary hearing of the motion, appellant testified that on April 30, 1963, there was a disturbance at the Greene County jail which was caused by him and a cellmate. They flooded the cell and threw burning rags on the bed. Eight deputy sheriffs came into the cell and hit the two with night sticks until appellant was paralyzed and couldn't move. Appellant was knocked to the floor, kicked in the face, dragged down the hallway and down two flights of stairs "to the hole" and stripped of his clothing. Afterward the deputies came back periodically for three days with threats and kicks. He was there fed bread and water. He could not eat the bread because of a swollen face. He was visited in the cell by Deputy Hutchinson and Sheriff Hendrix who told him it would be better for his health if he pleaded guilty. On one occasion Hutchinson came down to the cell, took appellant out and stated to him that he had heard appellant had threatened his life and that he would personally kill appellant if he ever had an opportunity, and then he knocked appellant to the floor and kicked him in the face again. He was kept in solitary confinement until May 2, 1963, when his brother and Mr. Moon, his attorney, visited him in the jail and he told Mr. Moon he wanted to plead guilty. Mr. Moon advised him not to plead guilty, but appellant insisted and Mr. Moon made the arrangements. When appellant was taken to court that afternoon, his hair and whiskers were matted with blood, his mouth was mashed so bad that his teeth were knocked through his lips. Appellant did not recall any questions the court asked him that day. His state of mind was that he had fear for his life, and wanted the authorities to stop bothering people who had committed no crime. He understood that if he pleaded guilty and got out of there they would stop harassing these other people. Appellant told the court that if he was sentenced he would like to be transferred to the penitentiary immediately. He was taken to Jefferson City early the next morning.

When he was taken to court for sentencing, appellant further testified the court made a statement that he had heard about the disturbance and told appellant that it looked like he came out on the worst end of the deal. Appellant did not recall any questions the court asked him, although it was possible that the court did ask various questions concerning the plea.

On cross-examination appellant admitted he had been involved in other jail disturbances; that on the occasion in question he was perched on top of the shower stall about six feet high with cellmate Hilliard. He denied that he had at that time a piece of porcelain with a towel around it in his hand. He was struck first while he was on the ledge. When Mr. Moon talked to him he appeared baffled about appellant wanting to plead guilty. On a previous trial of the case there was a hung jury. Appellant denied that he had told a jail inmate the reason that he pleaded guilty was that he thought it would have an effect on pending federal charges and that he thought he could escape from jail better in the penitentiary. He did not recall whether the court asked him if he was pleading guilty voluntarily, but it is possible he did. He did not tell the court why he was pleading guilty, because of fear of going back to jail and having his people continue to suffer.

Mr. William A. Moon was appellant's counsel. He had defended him in a previous trial, and was an experienced criminal lawyer since 1936 defending about twenty-five cases a year. He went to see appellant sometime after the jail disturbance and described his appearance as being unshaven and pale looking. Appellant had been in jail several months prior to that time. There were some marks on him as if he had been in a scuffle or fight, but Mr.

Moon could not recall what they were. Appellant was very emphatic about wanting to plead guilty and Mr. Moon was emphatic that he should not. It took Mr. Moon by surprise and he was shocked that appellant wanted to enter a guilty plea. He told appellant that he did not think they would ever be able to convict him on the particular charge. When they went to court he did not recall whether the court inquired as to appellant's appearance. He did not believe appellant's testimony (as to his physical condition) as he would have remembered such an appearance. There was a sixteen-count indictment brought in by the federal grand jury in Kansas City on March 8, 1963, after the first trial of appellant. There was nothing that caused him to believe that appellant was being forced, beaten, threatened or coerced into pleading guilty, and if that had been the case he would have gone into it very thoroughly. It was customary for the trial court to ask the defendant if he was entering the plea voluntarily and if he had been threatened or was being coerced into making the plea, but Mr. Moon could not recall specifically whether he did so on this occasion.

The testimony of Richard Peck, appellant's brother, tended to corroborate his testimony of his appearance on the day of the plea, except he did not know whether he saw the back of his head. He did testify that there was harassment of him and his mother by police officers after appellant's incarceration when the federal indictment was brought in.

The court ordered the testimony of James Dale Ramsey, Clarence Jenkins, Jerry Ward Davis, Lester Leo Abrams and Jack Virgil Caffey, inmates of the penitentiary, taken on behalf of appellant. It was stipulated that the depositions be received into evidence.

Ramsey testified he was in the Greene County jail on April 30, 1963, and heard a disturbance. He saw a bunch of deputies drag appellant, nude, by his feet down the hall to the mattress room. Appellant appeared to be unconscious, he had blood on his neck and on the side of his head. One or two of the deputies kicked appellant, who showed no signs of resistance. Jenkins testified that he heard the commotion and threats, saw the officers drag appellant out by his feet and saw blood on his head, shoulders and face. He saw officers kick appellant who remained in the hallway without resistance for ten or fifteen minutes. Davis saw appellant in the receiving cell when he came into the penitentiary. He had a bandage on his head and his lip was swollen. It was Davis' opinion that when appellant came to the penitentiary he was not like he had been there in 1959. Abrams remembered that appellant had a patch on the back of his head, his face was scarred, and his lip was cut when he was brought into the penitentiary. Caffey saw appellant shortly after he was brought to the penitentiary and observed that he didn't act the same as he did before.

In April and May, 1963, Jim Hutchinson was a Lieutenant on the Greene County Sheriff's Department. On April 30, 1963, he was called to duty because of trouble at the jail. When he arrived there was water running out of the maximum security cell and there was dense smoke which smelled like a burning mattress. Sheriff Hendrix, deputies Vandeventer, Cummings and McCroskey were present as was jailer Plank. Several times Sheriff Hendrix requested the prisoners to come out, but they refused. Then the cell door was unlocked and Hutchinson and McCroskey went into the sleeping area. He approached the shower stall and saw appellant sitting on top of it. He told him three times to come down, but he would not. Appellant had a large piece of porcelain in a bath towel in his hand. Hutchinson knocked him off the shower stall with a night stick—"Probably he jumped about the same time"—and he fell inside the shower stall. Appellant ran out the door and was subdued by other deputies who perhaps hit him. He was stripped of his clothes in the basement of the jail, but was not dragged down the steps by his feet. He was placed in the isolation, solitary cell

which is for unruly prisoners—those who cannot be controlled. There was no gash on appellant's head and no wound on his upper lip, and no blood on his body. Later Hutchinson looked him over and asked him if he had any injuries, and appellant complained of an injury to his right forearm where Hutchinson had hit him with the night stick. Hutchinson denied telling appellant that he heard he was after him and he (Hutchinson) would kill him, and denied ever telling appellant to get out of the cell while drawing his pistol and cocking it. Hutchinson never saw appellant after the night of the jail disturbance.

Byron Cummings substantially corroborated Hutchinson as to the jail disturbance incident, as did Jim Vandeventer. Deputy Jesse Craig transported appellant to the penitentiary after sentence, and observed no cuts, bruises, wound on his upper lip, or the bloody tee shirt.

■ There was conflict in the evidence concerning appellant's treatment while in jail to justify the court finding as it did that appellant suffered no injury other than bruises from being struck while the disturbance was being quelled. The finding is supported that no more force was used than was necessary to quell the disturbance. It follows then that appellant's plea of guilty was not induced by any ill-treatment while in jail. The evidence also conflicts as to whether Hutchinson threatened appellant's life. Therefore it also follows that the plea of guilty was not induced by fear of loss of life or his own safety as the court found.

■ Of great importance here is the fact that appellant was represented by experienced, competent counsel who had defended him in a previous trial. On May 2, 1963, appellant saw his counsel and advised him that he wanted to plead guilty. His counsel emphatically advised against it, as did appellant's brother. On this hearing appellant's counsel testified that he did not believe appellant's description as to his physical condition then as he would have remembered it. There was nothing that caused counsel to believe that appellant was being forced, beaten, threatened or coerced into pleading guilty. If there had been such, counsel would have gone into it very thoroughly. If appellant had in his mind at the time of entering his guilty plea alternatives of avoiding federal prosecution, or alleviating any harassment of his family by law enforcement officers, such is not sufficient to show that he involuntarily entered the plea. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, where it was said that an opportunity to limit the penalty did not demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was (contrary to that here) that the plea would be to the defendant's advantage. 91 S.Ct. 164 [1, 2].

■ The court found that it was not the custom of the court in 1963 to make a record of the proceedings on guilty pleas. Appellant conceded that it was possible that the court asked him various questions concerning the plea. Appellant was present with counsel who testified that it was customary for the court to ask the defendant if he was entering the plea voluntarily and if he had been threatened or coerced with respect to the plea. Such is the best evidence available and is sufficient to support the finding that the plea was entered voluntarily. Mooney v. State, Mo., 433 S.W.2d 542, 544 [1–4].

The findings and conclusions of the trial court are not clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN, J., and HENLEY, Alternate Judge, concur.

FINCH, J., not sitting.