**Michael RAGAN, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD 30526.**

Missouri Court of Appeals,
Western District.

Feb. 4, 1980.

Motion for Rehearing and/or Transfer
Denied March 3, 1980.

Jodie Caphaw Asel, Asst. Public Defender, Columbia, for movant-appellant.

John Ashcroft, Atty. Gen., Bruce E. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an appeal from denial of post-conviction relief sought by a motion to vacate conviction and sentence pursuant to Rule 27.26. The judgment is affirmed.

This proceeding predated the rule in *Fields v. State*, 572 S.W.2d 477 (Mo.banc 1978), but nonetheless, the trial court conducted an evidentiary hearing, with movant having counsel, and findings of facts and conclusions of law were entered in the court's memorandum decision.

Review of this cause is limited by Rule 27.26(j), which provides that appellate review shall be limited to a determination of

whether the findings, conclusions and judgment of the trial court are clearly erroneous.

Two points of error are alleged. Movant alleges the trial court erred in denying his motion because he was denied effective assistance of counsel. Movant stated that his counsel failed to make an appropriate investigation and falsely promised him (movant) that he would receive concurrent rather than consecutive sentences. Movant also alleges the trial court erred in denying relief because movant's plea of guilty was not voluntary due to conditions of his place of confinement and the fact that movant was struck by a deputy sheriff while in jail.

Movant's allegations of error provoke four questions for this court to answer. To answer these questions would provide the resolution of the alleged errors. The answer to these questions, and hence the ruling upon the alleged points of error, must be found within the evidence on the record.

These four questions are: (a) Was movant's right to a fair trial prejudiced through ineffective assistance of counsel because counsel allegedly conducted an inappropriate pretrial investigation? (b) Was movant's right to a fair trial prejudiced through ineffective assistance of counsel upon an alleged false promise of concurrent as opposed to consecutive sentences? (c) Was movant's plea of guilty made involuntary because of alleged unfavorable jail conditions? and (d) Was movant's plea of guilty made involuntary because movant was allegedly struck by a law enforcement officer?

The pertinent facts and their chronological account must be considered. The record reveals movant was arrested and charged with three counts of forgery on May 12, 1977. A preliminary hearing was conducted June 9, 1977. Movant was then bound over for trial. On June 20, 1977, arraignment in circuit court was conducted. Movant entered his plea of guilty to two of the three charges. He was sentenced to five years on each count. The sentences were to run consecutively.

Evidence related to events occurring between the date of arrest and the date of movant's plea of guilty disposes of movant's first point of error and the answer to the first two questions posed on this appeal.

The public defender, William Mays, had been assigned to defend movant. Mr. Mays, in turn, assigned the case to one of his assistants, David Doak. Aside from keeping advised of the case through attorney Doak, attorney Mays had no further contact with the case until he appeared with movant on June 20 for arraignment and the entry of the guilty plea.

On May 27, 1977, movant wrote a letter to attorney Mays. At the 27.26 hearing, this was state's Exhibit no. 1. In addition to a series of questions, none of which are relevant herein, movant alleged he could not get a fair trial in Callaway County. Movant further stated that as long as C. E. Hamilton continued as the prosecutor in his case, he would refuse to appear in court.

On May 31, 1977, movant wrote a second letter to attorney Mays. This letter was the state's Exhibit no. 2. This letter asked counsel to waive arraignment and to secure a sentencing date based upon movant's desire to plead guilty. The pertinent portion of this second letter reads as follows:

". . . after I go to my preliminary hearing June 9, and they bound [sic] me over to the circuit court could you wave [sic] my arraingment [sic] and go ahead and get a sentencing date set sometime in june [sic]? I want to go ahead and plead guilty and get my time as soon as possible. I am good for the charges and I don't think there is any way I can beat it."

On June 9, 1977, movant wrote a third letter, this time addressed to attorney Doak. The body of this letter, which was state's Exhibit no. 3, reads as follows:

"I would like to know if when I go to circuit court june [sic] 20 if I could go ahead and plead guilty and get sentenced the same day? they [sic] have a good case on all three counts and there really isent [sic] any use of me laying around here for a long length of time. But if

you think I would be doing the wrong thing by pleading guilty so soon let me know if you think Hamilton will come down on the amount of time he wants to reccomand [sic] now I'll be willing to stick it out here as long as it takes. I would appricate [sic] it if you could answer this letter when you get the time. I know your [sic] busy but the way things are going now I don't know what to think."

At this juncture, it should be pointed out the three letters have common denominators upon the issues raised by movant's first point of error. These common denominators are (1) the complete absence of any requested investigation by counsel prior to trial and (2) movant's request for entry of a plea of guilty. The letters also reveal movant's realization that the state had a strong case against him and that he was, in fact, guilty.

Movant contends he was denied effective assistance of counsel upon counsel's failure to conduct an appropriate pretrial investigation. In addition to the portion of the foregoing letters which witness a marked absence of any reference for any investigation, these same letters contain the acknowledgment by movant that the state's case against him was strong. In addition, it may be properly inferred from these letters that movant desired and urged his counsel to proceed directly to enter his plea of guilty and to forego any pretrial preparation and trial proceedings.

Trial counsel for movant testified that at the preliminary hearing, the state presented a strong case on two of the three charges. The evidence included an eye witness's identification of movant as the perpetrator of the offense.

■ It must be remembered that movant entered a plea of guilty, and in order for movant to prevail, he must prove that his counsel was ineffective and that this ineffectiveness, in turn, rendered his guilty plea involuntary. See *Barylski v. State*, 473 S.W.2d 399 (Mo.1971); *Brown v. State*, 581 S.W.2d 407 (Mo.App.1979) and *Coleman v. State*, 542 S.W.2d 53 (Mo.App.1976). Movant must show, by proper evidence, that advice of other attorneys would have been different under the same facts and circumstances, see *Goodwin v. State*, 502 S.W.2d 269 (Mo.1973).

■ Movant must show by competent evidence that his position would have been enhanced by discovery, by the interviewing of witnesses, by the development of defenses and by proof that an inadequate investigation was prejudicial to his right to a fair trial. That a showing of prejudice is required, see *Curry v. State*, 504 S.W.2d 97 (Mo.1974); *Barber v. State*, 564 S.W.2d 914 (Mo.App.1978) and *Adkins v. State*, 560 S.W.2d 67 (Mo.App.1977).

In April, 1979, a new standard to be applied in determining ineffective assistance of counsel was adopted by the State Supreme Court. This new standard was set forth in *Seales v. State*, 580 S.W.2d 733 (Mo.banc 1979). This decision applied the ruling in *Reynolds v. Mabry*, 574 F.2d 978 (8th Cir. 1978). This new standard, in summary, states that ineffective assistance of counsel requires a showing that (a) the care and skill of other competent attorneys rendered similar services under the same circumstances would have led to different actions; and (b) the accused was prejudiced by the actions of his counsel.[1]

■ In the instant case, there is no allegation or evidence that any information could have been discovered through any investigation, or that movant was prejudiced by the absence of any additional investigation.

It is also necessary to point out that the actions of movant by way of his letters and conversations with counsel acknowledged the strength of the evidence against him and such actions did not even remotely request, suggest, urge or demand any pretrial investigation by counsel. To the contrary,

---

1. *Seales v. State, supra*, was declared to be prospective and hence has no application to the instant case, however, even under the principle enunciated in *Seales v. State, supra*, there is no showing of ineffective assistance of counsel.

movant, by his oral and written requests, directed his counsel to enter a guilty plea on his behalf to enable him to commence the service of his sentence.

■ Regarding the allegation of ineffective assistance of counsel upon the basis of false promise that movant was to receive concurrent versus consecutive sentences, the hearing produced the following evidence.

Movant testified he was advised by his attorney that he would receive a five-year sentence. He was quizzed about his testimony at his arraignment, where he testified no promise regarding sentence had been made. He stated he lied upon his arraignment under advice of counsel. In addition to movant's testimony, a co-inmate testified he heard movant's counsel promise movant a five-year sentence.

The evidence further revealed that both movant's counsel and the prosecutor testified that no agreements or promises regarding sentence had been discussed with or afforded movant.

The court was also in the sole position to adjudge the credibility of the witnesses. There was evidence upon which the trial court could have found no promise of sentence was ever made and hence, there would be no negative effect upon the voluntariness of movant's plea of guilty. It has been held that a guilty plea is voluntary if upon arraignment, the accused advises the court no promises were in effect, see *Morgan v. State*, 569 S.W.2d 16 (Mo.App.1978). Upon the evidence of record as related to the instant case weighed against the standard for ineffective assistance of counsel, it is concluded that questions (a) and (b) above must be answered in the negative.

Point one is ruled against movant.

Movant continues his attack upon the voluntariness of his guilty plea by alleging unfavorable jail conditions and the fact that he was struck by a law enforcement officer. This is reflected in questions (c) and (d) above. These two questions find their answer in a continued and interrelated link in the evidence of the record, and both questions are taken up together.

A co-inmate testified movant had been placed in the juvenile cell of the Callaway County Jail on June 12, and that at approximately 6:30 p. m., movant was removed from the cell forcibly by three law enforcement officers. This inmate testified movant was beaten by the three officers without provocation. This witness testified that in his opinion, the jail cells were filthy and infested with bugs and mice, and that because of the size of the cells, not more than one person could move around inside. On cross-examination, he denied he was aware of any flooding of the jail cells. He stated he and movant had been placed in the juvenile cells because they were alleged to have damaged the cell door in the area known as the "bull pen". He did not know whether movant had stopped up the toilet in his (movant's) cell, but said that movant cleaned up the water on the floor.

Movant testified that the door on the big tank (bull pen) had "gotten messed up" and that he, along with others, was moved to the other cells. He stated that water had accumulated on the cell floor from the shower. He stated that officers pulled him out of the cell and beat him and as a result of this beating, had bruises over his left eye, but that no other scars or blood was produced. He said that the county sheriff later appeared and threatened further beatings if he did not plead guilty. Movant said he did not advise his attorney of this event, but other persons did on his behalf.

Movant also testified that the cell was dirty, that the cell contained only a rubber mattress, that he was denied the use of a phone after he received permission to make one call when he was first placed in the jail, that he was denied visitors, and that he suffered mental strain as a result of the conditions of his cell. He insisted that these factors influenced him to plead guilty.

The last part of movant's testimony is hard to square with the written declaration by movant in his letters of May 27, 1977 and June 9, 1977 wherein the following statements are found:

(letter of May 27):

". . . if Hamilton continues to be the prosecuiting [sic] attorney on my case I will refuse to appear in court. I do not care what they do to me for not appearing in court and I don't really care how long I will stay in the county jail because if they sentence me my jail time will come off my sentence."

(letter of June 9):

". . . if you think Hamilton will come down on the amount of time he wants to reccomand [sic] now I'll be willing to stick it out here as long as it takes . . ."

In contrast to the foregoing testimony, five law enforcement employees testified. Officers Earl Jatho and James Wilson related the following facts: On June 13, 1977, movant asked to talk to Jatho and threatened to flood his cell if his request was not honored. Jatho and Wilson went on to dinner that evening, but were called back because movant's cell was flooded. They went to movant's cell, pulled him out when he refused to exit the cell and struck him once when he acted like he was going to start trouble. They never, at any *other* time, threatened or struck movant. They insisted that a jail disturbance, and not damage to the door of the bull pen, led to confinement of movant in the juvenile cell. Officer Dean Robinson gave a similar account of events as Jatho and Wilson.

Beverly Lee, an employee of the jail, testified there was a jail disturbance the weekend before, which resulted in the cancellation of visitation. She was not present the night of June 13, 1977.

Ted Salmons, Sheriff of Callaway County, testified he saw movant the morning of June 14, 1977, and confronted movant about the flooding and other damage to the jail. He denied any conversation about threatening movant to plead guilty. He observed no physical injury to movant and said that movant made no mention to him of having been struck or beaten.

There was testimony by the foregoing witnesses that the jail conditions were not as bad as represented by movant. Testimony of the prosecutor and trial counsel concluded nothing unusual about movant's physical appearance on the date of movant's arraignment.

The record clearly shows the trial court could have found, from the evidence, that movant entered his plea of guilty as a result of his own choice, independent of any conditions of his place of confinement or as a result of his being struck by a law enforcement officer. The trial court was in the sole position to adjudge the credibility of the witnesses.

■ Movant's contentions that the unfavorable conditions of his jail cell and the fact he was struck by a law enforcement officer rendered his guilty plea involuntary is not supported by the evidence. It has been held that dissatisfaction with a penal condition brought about by one's own conduct, and a hope that by a guilty plea, a different kind of incarceration might be achieved, are not factors of involuntariness in a plea, see *Verdon v. U. S.*, 296 F.2d 549 (8th Cir. 1961), cert. denied 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed.2d 811 (1962); *Swain v. State*, 492 S.W.2d 778 (Mo.1973); *Coleman v. State, supra,* and *Collins v. State*, 450 S.W.2d 186 (Mo.1970).

■ A plea is not rendered involuntary because of disciplinary measures, see *Brodkowicz v. State*, 474 S.W.2d 822 (Mo.1971) and *Peck v. State*, 467 S.W.2d 884 (Mo. 1971).

The case of *Peck v. State, supra*, is almost identical to the case at hand in that there was a flooding in the jail, separate confinement and conflicting testimony as to whether there was a beating or justified discipline.

The evidence herein supports the finding by the trial court that a flooding occurred and that no more force was used than necessary to remove movant from his cell, and that movant was merely discontented with the surroundings of his place of confinement.

The evidence fails to support movant's contention that his guilty plea was rendered involuntary because of the conditions of his

place of confinement and the fact that he was struck by a law enforcement officer. Questions (c) and (d) above must be answered in the negative. Point two is ruled against appellant.

This court determines the findings, conclusions and judgment of the trial court were not clearly erroneous and for the foregoing reasons, the judgment of the trial court is in all respects affirmed.

All concur.

